# Rhoads *versus* The Hoernerstown Building and Savings Association.

1. The Act of October 13th 1840 provided for the incorporation of literary, charitable, religious and beneficial societies, fire engine and hose companies. The Act of April 22d 1850 extended the Act of 1840 to mutual savings, land and building associations, but confined its operations to the counties of Philadelphia, Schuylkill and Berks. By the Act of May 7th 1855, the Act of 1850 was extended to Lehigh, Northampton, and Dauphin counties, and by subsequent acts to other counties of the state. The Act of April 12th 1859, after referring in the preamble to the Act of 1850 and its supplements and providing in its eighth section that all charters granted under these acts should be valid and that the premiums paid by mutual savings fund, loan and building associations should not be deemed usurious, made a general provision for the incorporation of these associations. *Held*, that the general Act of 1859 repealed the local Act of 1850 and its supplements, and that thereafter these associations must be incorporated under the provisions of the general law.

2. *Held*, further, that a building and savings association incorporated in 1869 by the Court of Common Pleas of Dauphin county upon a petition signed by a less number of persons than required by the Act of 1859, and having other provisions inconsistent with those conferred by that act, cannot assume to have the powers and privileges of a building association under the Act of 1850 and its supplements and claim that it is protected by the eighth section of the Act of 1859, and therefore when said association sued out a writ of scire facias on a mortgage given by a shareholder to secure a loan made by the corporation to the former who had ceased to pay interest and dues, it could derive no support from the Act of 1859 and could only recover the amount of money actually loaned with legal interest.

May 25th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Common Pleas of *Dauphin county*: Of May Term 1876, No. 103.

This was a scire facias on a mortgage wherein The Hoernerstown Building and Savings Association was plaintiff, and Frederick E. Rhoads, defendant.

On the 24th of March 1869, Daniel Schaffner, Jacob Fackler and Simon R. Rhoads petitioned the Court of Common Pleas of Dauphin county for the charter of the company plaintiff and upon the 27th of April 1869, the court made a decree, "that the persons who have signed the within application and their successors shall, according to the articles and conditions within set forth and contained, become a corporation or body politic."

By this charter the corporation was to be known as the Hoernerstown Building and Savings Association, "having for its object the accumulation of a fund, by the savings of the members thereof, sufficient to enable every stockholder to invest his earnings safely and speedily, and to purchase real estate or to invest the same as it may be deemed by him or her most profitable." No limitation was fixed to the existence of the corporation.

The portions of the charter essential to a proper understanding

of the question involved in this case, and referred to in the opinion of the court as inconsistent with the Act of 1859, are as follows:—

"ART. II. MEMBERS AND STOCKHOLDERS.—Sec. 3. Each person becoming a shareholder of the stock of this association, shall pay the sum of twenty-five cents as an initiation fee, for each and every share he and she subscribes, and shall afterwards, in each and every calendar month, pay to the treasurer the sum of one dollar on each and every share, during the whole period through which it shall continue. As soon as the funds of the society shall have accumulated, so as to divide to each and every share the sum of two hundred dollars, or property to that amount, the association shall then wind up, and distribute its funds to the shareholders.

"Sec. 4. In case any stockholder shall neglect or refuse to pay his or her monthly dues and interest, as often as the same shall be payable, each and every shareholder so neglecting or refusing shall forfeit and pay the additional sum of ten cents on each share for each and every such monthly refusal or neglect, to be charged with the monthly dues; and in case he or she persists in such refusal for a period of six consecutive months, such shareholder's name shall be stricken from the list, and he or she shall be entitled to receive the money he or she has actually paid in, deducting therefrom the fines he or she owes, and such proportion of losses the association may, up to that period, have sustained—such loss to be taxed and ascertained by the treasurer and secretary. No interest shall be allowed to such delinquent and expelled stockholder.

"Sec. 5. Any stockholder to whom one or more loans shall have been granted, neglecting or refusing to pay the monthly interest accruing thereon, as is hereinafter directed, and continuing so delinquent for the period aforesaid, shall be made to pay back the loan or loans so granted to him or her, deducting therefrom such payment as he or she may have made on his or her share or shares, and the fines charged against him or her, together with the proportion of losses sustained and ascertained as aforesaid, not allowing him or her any interest on the money by him or her paid in: *Provided, however,* That any shareholder wishing to withdraw from the association shall be allowed to do so on good and sufficient cause shown, of which the board of directors shall be the judges, provided such withdrawal shall not operate to the loss or injury of the association: *And provided further,* That on the death or removal to a distance of any shareholders, such persons shall be entitled to receive, after one month's notice, the full value of the money they have paid in, with six per cent. interest, first deducting their pro rata share of expenses."

"ART. IV. LOANS.—Sec. 1. Each shareholder, for each and every share he or she may hold in this association, shall be entitled to a loan of two hundred dollars from the funds of the society, so soon as the funds shall be sufficient for that purpose.

" Sec. 2. Whenever the funds of the treasurer will warrant, there shall be one or more shares loaned to the highest bidders, but in no case shall the premiums offered be less than ten dollars on each and every share loaned.

" Sec. 3. The directors shall be empowered to purchase ground as they may think prudent for the association, which may be offered to the shareholders for their share; and in case such property cannot be so applied, it shall be rented or otherwise disposed of to advantage: *Provided, however,* That one-half the monthly receipts shall be offered to loan to such shareholders as may wish to make a loan, if any there be.

" Sect. 5. The amount of premium at which each loan was granted to the shareholders shall, in all cases, be deducted from the loan, and such borrower shall moreover secure such loan to the association, by bond and mortgage, and a policy of insurance against fire, or by the assignment of stock of this association, sufficient to secure the loan. Of the sufficiency of such securities the directors shall in all cases be satisfied, and in case such satisfactory security can in any instance not be given, such loan shall not be granted, but the interest shall nevertheless be exacted; and the borrower be made to pay it for one month, in the nature of a penalty.

" Sect. 7. Stockholders who have obtained loans from the capital of the association shall pay to the treasurer every month one-half per cent. interest for the same. Any stockholder paying the monthly instalments on his stock for six months or a longer period in advance, shall be credited with the amount to be paid in advance; but no interest for any sum or amounts so paid shall be allowed to the stockholder."

The corporation duly organized under the provisions of this charter and commenced business.

The mortgage on which the scire facias in this suit issued was made by the defendant, who was a shareholder, on the 28th of February 1870, to the association, to secure the payment of a bond of $1000, which conditioned that the mortgagor should pay monthly to the association and until it ceased to exist, one dollar on each share of stock he held, interest at the rate of one half per centum on the sum of $1000 of the money loaned to him, and that he should pay all fines to which he might become liable under the constitution and all by-laws of the association, and in case of default of monthly payments of one dollar or of interest on the sum mentioned at the times provided, then the association was authorized to collect forthwith the $1000 and interest thereon by execution or other means.

Rhoads ceased paying both interest and dues in February 1873, and the association claiming the powers and privileges of a building association under the Act of 1859, commenced these proceedings to recover from him $809.90, the amount alleged to be due upon the mortgage.

[Rhoads v. Hoernerstown Building & Savings Assoc.]

The defendant resisted, contending that the association was not a building association under the Act of 1859, and not entitled to the powers conferred therein, and that it could only recover the money actually loaned with interest.

The court below (Henderson, A. L. J.) charged the jury :—

" The Hoernerstown Building and Savings Association was incorporated April 27th 1869, by the Court of Common Pleas of Dauphin county. Is it a corporation under the Act of 1859 ? It is earnestly contended on the part of the defendant that the requirements of this act have not been complied with, and that the charter is not under its provisions. The first section of the act declares ' That at any time when ten or more persons may desire to form a mutual savings fund, loan or building association.' It appears in the present case that the decree is made and the charter granted upon an application signed by only three persons. We do not propose to go behind the decree of the court, but we may look into it and the charter in order to ascertain the privileges and immunities of the association and the rights of its members.

" This however is a question of little practical importance in this case. The court had ample power under the Act of April 22d 1850, extended to Dauphin county by Act of May 7th 1855, to grant the charter upon an application, as prescribed by the 13th section of the Act of October 13th 1840. The 8th section of the Act of 1859 covers this case. The loan having been made subsequently to the passage of that act, the law can in no sense be open to the charge of mere ' arbitrary legislative interpretation.' In its application it is not retroactive."

The verdict was for the plaintiff for $615.96, and judgment was entered upon the verdict.

Defendant took this writ and assigned for error, inter alia, the foregoing portion of the charge of the court, which is the only question that enters into the decision of this court.

*Fleming & McCarrell*, for plaintiff in error.—The association is not a building association under the Act of 1859. No reference is made to the Act of 1859 in petition for charter, decree of incorporation, or charter itself. To possess the powers claimed it must have been affirmatively shown therein. The requisite number of persons under the Act of 1859 did not join in the petition ; only three joined here ; that Act requires ten or more. The intention of the Act of 1859 was to group together and re-enact all the material provisions of the Act of 1850 and its supplements. The purpose of the 8th sect. of Act of 1859 was to confer upon all associations previously incorporated under Act of 1850 and supplements, the same privileges which could be conferred on those incorporated afterwards under Act of 1859. It was never contemplated that after Act of 1859 any associations should be incorporated under Act of 1850

and supplements. The Act of 1859 was a repeal of the Act of 1850 and supplements, saving the validity of their charters and securing to them the same powers as associations under Act of 1859. A subsequent statute, revising the whole subject-matter of a former one, although it contains no express words to that effect, operates to repeal the former: Johnston's Estate, 9 Casey 511; Commonwealth *v.* Cromly, 1 Ashmead 181; Bartlet *v.* King, 12 Mass. 545. So where the prior enactment is local and new one general in its operation: Nusser *v.* Commonwealth, 1 Casey 126. Acts which grant a right conditioned on different things, are clearly inconsistent: Gwinner *v.* Lehigh Railroad Co., 5 P. F. Smith 126. The rights of shareholders under these charters and that under Act of 1859 are inconsistent and entirely different.

*Gilbert & McPherson*, for defendant in error.—There is no requirement of law that all the applicants for a charter shall sign their names to a written petition. The manner of their application is left to the discretion of the court, and the decree of the court is conclusive that all matters necessary to give it jurisdiction were done. It is not a subject of inquiry here whether a sufficient number made application for the charter. Even if this corporation has powers inconsistent with those conferred by the Act of 1859, and they have never been exercised, courts will not try to invalidate franchises lawfully granted because they are coupled with others which a court might possibly not have power to confer. It is not necessary for a charter to repeat all the parts of a statute which creates it, and therefore why express its duration? If it obtains the privileges intended by a law it takes them with the limitations prescribed in that law without mentioning them in the charter. The Act of 1859 contains no words of repeal, and repeal by implication is not favored in law. The Act of 1850 is a particular law and applies to only a small portion of the Commonwealth. It is extended by local Act of 1855 to Dauphin county. In absence of repealing clause in Act of 1859 these laws are in force: Brown *v.* Commissioners, 9 Harris 37; Street *v.* Commonwealth, 6 W. & S. 209; Johnston's Estate, 9 Casey 511.

Mr. Justice PAXSON delivered the opinion of the court, October 9th 1876.

The Hoernerstown Building and Savings Association was incorporated by the Court of Common Pleas of Dauphin county in the the year 1869. The petition for the charter was signed by three citizens only, and the decree of the court sets forth that the persons who have signed the application, and their successors, shall, according to the articles and conditions set forth in the application, become a corporation or body politic, &c. The company subsequently commenced business under its charter, and sued out a writ of scire facias

[Rhoads *v.* Hoernerstown Building & Savings Assoc.]

upon a mortgage of $1000, given by Frederick E. Rhoads, plaintiff in error, and a member and shareholder of said corporation, to secure a loan of money made to. him by the latter. Mr. Rhoads ceased paying his interest and dues in February 1873, whereupon the .association commenced these proceedings in the court below, and upon the trial claimed the powers and privileges of a building association under the Act of 1859. The sum of $809.90 was demanded as the amount due upon the mortgage. This claim was resisted by the defendant below, upon the ground that the said association was not incorporated under the Act of 1859; was not entitled to exer- ·cise the powers specified in said act, and could only recover the amount actually loaned, with interest. The main point in the case, therefore, is the extent of the powers of the association under its charter. The validity of its charter is not questioned; indeed, could not be in this collateral proceeding.

That this association was not incorporated under the Act of 1859 is manifest. Said act (Pamph. L. 544) provides, that when any ten or more persons may desire to form a mutual savings fund, loan or building association, under the provisions of said act, they shall make application to the Court of Common Pleas, &c. No authority is given to said court to incorporate any number of persons less than ten for such purpose. As before observed, the application for this charter was signed by but three persons, and the decree of the court, by its express terms, confers the corporate privileges upon the petitioners and their successors. We will not assume that so expe- rienced a court as the Common Pleas of Dauphin county intended to confer upon three persons the rights and powers embraced in the Act of 1859. An examination of the charter itself shows that ·many of its important provisions are inconsistent with the Act of 1859, if not in direct conflict with it. No limitation upon its own existence is contained in this charter, nor is any such limitation to ·be found in the decree of the court. The first section of the Act of 1859 declares, "that no charter granted under or by virtue of the provisions of this act be for a longer period than twenty years." ·Shareholders in this association can withdraw only upon "good and sufficient cause shown, of which the board of directors shall be the judges," while stockholders in associations under the Act of 1859 have the absolute right to do so by giving thirty days' notice of his or her intention to withdraw. (Sec. 2.) Again, associations under the Act of 1859 have no power to purchase and hold real estate, unless they have a previous lien upon or interest in it, where they may purchase the same, if necessary, to protect the interests of the association. (Sec. 9.) The directors of this association are "empow- ered to purchase ground and erect or build dwellings, or may pur- chase such property as they may think prudent for the association, which may be offered to the shareholders for their share." Other and striking points of dissimilarity might be noticed between the

powers contained in this charter and those conferred by the Act of 1859. What has been said is sufficient to show that it was not granted under said act. The court below appears to have felt the strain of this part of the case, and avoided it by saying: "This is a question of little practical importance in this case. The court had ample power, under the Act of April 22d 1850, extended to Dauphin county by Act of May 7th 1855, to grant the charter upon an application as prescribed by the 13th section of the Act of October 13th 1840. The 8th section of the Act of 1859 covers this case. The loan having been made subsequently to the passage of that act, the law can in no sense be open to the charge of mere arbitrary legislative interpretation. In its application it is not retroactive." If the premises assumed by the court below be right the conclusion is not inaccurate.

Prior to the Act of 1859 our legislation in regard to building associations was mere patchwork. The Act of 13th of October 1840 (Pamph. L. 5) makes no mention of building societies. It refers to associations for literary, charitable and religious purposes, beneficial societies, fire engine or hose companies. The Act of 22d April 1850 (Pamph. L. 550) extended the Act of 1840 to "mutual savings funds, land and building associations." The Act of 1850 was local, being confined to the counties of Philadelphia, Schuylkill and Berks. The Act of May 7th 1855 (Pamph. L. 481) extended it to Lehigh, Northampton and Dauphin. By various other acts not necessary to enumerate, it was extended to some other portions of the state. But it never became a general law. Then came the Act of 12th April 1859 (Pamph. L. 544), referring in its preamble to the Act of 1850 and its supplements; reciting the fact that said act and its supplements had been extended over several of the counties of the state; that the authority thus conferred had "been freely exercised, and by such encouragement, and by allowing members of said associations to adopt such constitutions or articles of association as to them might seem most beneficial, and by allowing parents to sign the constitutions for and on behalf of their minor children, a large and constantly increasing interest has been created, such associations affording to the indigent an opportunity to safely and profitably invest their earnings, thus inducing the people to form habits of economy and self-denial by setting apart periodically a portion of their earnings, enabling them to purchase or build their own homes, increasing the number of small real estate owners, and thereby enriching and strengthening the Commonwealth," &c. The act then proceeds to provide "that at any time when ten or more persons may desire to form a mutual savings fund, loan or building association * * * they shall make application to the Court of Common Pleas of the proper county," &c. The 8th sect. makes valid all charters previously granted under the Act of 1850 and its supplements, and provides

that the premiums taken by such companies shall not be deemed usurious.    There are no words in the Act of 1859 by which the Act of 1850 was expressly repealed.    It is clear, however, that it was intended to supply it.    The Act of 1850, as before observed, was local.    The Act of 1859 is a general law, extending over the entire state, and legislating upon the same subject.    The 8th sect. conferred upon all building associations previously chartered, all essential rights and powers which could be given to associations afterwards chartered under the Act of 1859, thus placing all these corporations practically upon the same footing.    Surely the legislature could not have intended after thus disposing of the whole subject by a general law, to continue in force the local laws then in existence, and which if left to remain could only lead to confusion. It was clearly the intention of the law-making power that after the passage of the Act of 1859, all applications for charters of building associations should come under its provisions, and should be made by not less than ten persons, else we should have the anomaly of one law requiring such application to be made by not less than ten persons, and another law authorizing it to be made in many portions of the state by any number less than ten.    The legislature having by the Act of 1859 revised and passed upon the whole subject, we think the reasonable construction of said act is that the Act of 1850 is repealed by implication, leaving all rights acquired and charters granted under said act to remain as they were previously to the passage of the Act of 1859, excepting in so far as certain additional powers were conferred upon them by said last-named act.    It was held in Johnston's Estate, 9 Casey 511, that "a subsequent statute, revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, in the principles of law, as well as in reason and common sense, operate to repeal the former."    To the same effect is Bartlet v. King, 12 Mass. 545; King v. Cator, 4 Burr. 2026; King v. Davis, 1 Leach's Cases 306. Says Lowrie, C. J., in Nusser v. Commonwealth, 1 Casey 126, "where the prior enactment is local and the new one general in its operation, the maxim (that a subsequent statute is a repeal of all repugnant provisions in a prior one) applies with undiminished force; because the whole includes the several parts, and all local laws establishing one rule for one portion of the community, and a different one for the remaining portion, are inconvenient and of doubtful propriety except where they relate to matters which are local in their nature, and are enacted by the proper municipal authorities of the territory over which they are designed to operate." In Gwinner v. The Lehigh & Delaware Gap Railroad Co., 5 P. F. Smith 126, it was said by Justice Agnew that "acts which, although in *pari materia*, grant a right conditioned on different things, are inconsistent, and the inconsistency operates as a repeal."

[Rhoads *v.* Hoernerstown Building & Savings Assoc.]

We are of opinion that this corporation was not incorporated under the Act of 1859, and that the Act of 1850 and its supplements were repealed by the passage of the former act. It follows that it cannot derive any support from the Act of 1859, and that in this suit it can only recover the amount of money actually loaned with legal interest. We are not bound to pursue the subject further. The Act of April 12th 1867 (Pamph. L. 70) may possibly sustain the charter of this corporation as a savings fund association. No such question is before us and we will not speculate.

Judgment reversed, and a *venire facias de novo* awarded.