## Commonwealth ex rel., Appellant, *v.* Keeper of County Prison.

*Criminal law—Professional thief—Summary conviction—Acts of March 13, 1862, P. L. 115, March 16, 1864, P. L. 16, and June 7, 1901, P. L. 492—Statutes—Repeal.*

1. Under the Philadelphia local Act of March 13, 1862, P. L. 115, as amended and extended by the Act of March 16, 1864, P. L. 16, as well as under the general Act of June 7, 1901, P. L. 492, there are three essentials to a valid summary conviction upon the charge of being a professional thief: (1) The defendant must be a professional thief, burglar or pickpocket; (2) he must have been arrested in one of the places designated in the act; (3) it must be proven to the satisfaction of the magistrate that he was frequenting or attending a place for an unlawful purpose.

2. In such a case a summary conviction cannot be sustained where neither the magistrate's record, nor the commitment sets forth the place which the relator was frequenting or attending.

3. If in habeas corpus proceedings it appears by an agreement between the district attorney and counsel for the relator that the place where the relator was arrested was a restaurant, even then the conviction cannot be sustained, because the act of March 16, 1864, which included restaurants, was repealed by implication by the act of June 7, 1901, which omitted restaurants as one of the forbidden places.

Argued Feb. 27, 1912. Appeal, No. 15, Oct. T., 1912, by plaintiff, from order of Q. S. Phila. Co., remanding relator in case of Commonwealth ex rel. Jacob Melinkoff *v.* Keeper of County Prison. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Petition for habeas corpus.

The following facts were agreed upon between the parties as being the record in the case.

Jacob Melinkoff, the appellant, was in a restaurant on North Eighth street, Philadelphia, Pa., on January 1, 1912, at about 9 P. M., sitting at a table. That there were about twenty other men in such restaurant sitting at this

and other tables, some of whom the police testified were pimps, idle and disorderly persons, etc.

A number of policemen came to the restaurant at the time above indicated, having no warrant for the arrest of the appellant, nor any one in said restaurant, and placed everybody upon the premises under arrest.

It is admitted that the police did not make the wholesale arrests because of any disturbance on the premises.

The following day, January 2, 1912, the appellant, Jacob Melinkoff, having been taken before Magistrate MacFarland, a committing magistrate in and for Philadelphia county, was charged with being a professional thief. A detective of this city testified from a memoranda kept by the police department that on March 1, 1899, he was convicted of larceny and sent to the House of Refuge by Judge ARNOLD, that under the name of John Gordon, on January 5, 1900, he was convicted of the larceny of lead pipe to the value of $6.00, and sentenced to forty-one days in the county prison by Judge WILLSON, that on January 25, 1901, on a charge of larceny he was acquitted and discharged by Judge WILTBANK, that on April 13, 1901, on a charge of suspicion of larceny he was discharged by Magistrate Smith, that on November 15, 1901, on a charge of picking pockets he was discharged by Magistrate Cunningham, that on November 30, 1901, on a charge of picking pockets on a summary conviction before Magistrate Kochersperger he was given ninety days in the county prison, but was subsequently discharged on a writ of habeas corpus, that on May 9, 1905, on a charge of picking pockets he was discharged by Magistrate Yates, that on November 3, 1905, on a charge of picking pockets he was given ninety days in the county prison by Magistrate Kochersperger, but was subsequently discharged on a writ, the court directing him to enter $500 bail to keep the peace, that in December, 1905, he was arrested charged with larceny from the person, but that subsequently the bill of indictment was quashed, that he was arrested May 8, 1909, on a charge of picking pockets in

Coatesville, Pa., and held in $800 bail for court, which was subsequently forfeited on his nonappearance.

The magistrate then committed Jacob Melinkoff to the county prison for ninety days, as a professional thief.

It is admitted that the place where the said Jacob Melinkoff was arrested was a restaurant. The officers testified that it bore the reputation of being a place frequented by thieves and disreputable characters. Although there were about twenty men at the tables, there were only several plates of food.

That on January 3, 1912, the said Jacob Melinkoff was taken before Honorable W. W. Carr, on a writ of habeas corpus, and that no decision was given in such matter until January 13, 1912, when a decision was rendered remanding into custody the said Jacob Melinkoff.

*Error assigned* was in remanding the relator.

*F. Carroll Fow* and *John H. Fow,* for appellant.—It has been decided by his Honor Judge STAAKE in Com. v. County Prison Superintendent, 36 Pa. C. C. Rep. 411; s. c., 18 Pa. Dist. Rep. 311, that the Act of June 7, 1901, P. L. 492, repeals the former acts just referred to, and if that decision be correct, Jacob Melinkoff has not violated any of the provisions of the Act of June 7, 1901, P. L. 492, as the word "Restaurant" is not mentioned in that act; therefore no arrest or commitment could be legally made.

OPINION BY RICE, P. J., April 15, 1912:

This is an appeal by the relator from an order of the quarter sessions, made after hearing upon habeas corpus, remanding him to the county prison, to which he had been committed by a magistrate of Philadelphia for three months upon a charge of being a professional thief. Under the local Act of March 13, 1862, P. L. 115, as amended and extended by the Act of March 16, 1864, P. L. 16, as well as under the general Act of June 7, 1901, P. L. 492, there are three essentials to a valid summary conviction upon

such charge: First, the defendant must be a professional thief, burglar or pickpocket; second, he must have been arrested in one of the places designated in the act; third, it must be proven to the satisfaction of the magistrate that he was frequenting or attending the place for an unlawful purpose. This is apparent upon a reading of the acts and was expressly decided in Commonwealth ex rel. Montano v. Superintendent of County Prison, 18 Pa. Dist. Rep. 311. The commitment in the present case so far as material here reads as follows: "Whereas, one Jacob Melinkoff was this 2d day of January, A. D. 1912, charged before Thomas MacFarland, Magistrate of the Central station of the City of Philadelphia, on the oath of Detective Lindner with being a professional thief; and whereas, the said defendant was. arrested by Detective Barry, one of the police authorities of the said city, and charged with frequenting and attending said place for an unlawful purpose, to wit, for the purpose of robbery and brought before me this day on said charges. And as it has been this day proven to my satisfaction, by sufficient testimony, that the said defendant was frequenting and attending such place for an unlawful purpose, to wit, for the purpose of robbery, as well as that the said defendant is a professional thief. Now these are to authorize and require you, the said constable," etc. It will be observed that while the first and third essentials are alleged substantially, the place where the relator was arrested and which he was frequenting and attending, is neither specifically described nor alleged in general terms to be one of the forbidden places described in any of the acts above referred to. Nor is this substantial defect in the commitment helped out by the magistrate's record, which simply shows that the relator was charged on oath with being a professional thief and after hearing was committed to the county prison for ninety days. . We cannot regard the omission to set forth the place where the relator was frequenting or attending as a mere informality or irregularity. It is a jurisdictional defect, for in the

absence of that fact there was want of power to convict him summarily and commit him to the county prison. But one of the facts brought upon the record by the agreement of the district attorney and counsel for the relator is that the place where the latter was arrested was a restaurant. This is not one of the places designated in the act of 1901 or in the act of 1862, but by the act of 1864 the provisions of the latter act were "extended to authorize the arrest of professional thieves, burglars or pickpockets, at any hotel, restaurant, auction, sale in private residence, passenger car, or at. any other gathering of people, whether few or many, in the cities of Philadelphia, Allegheny, Lancaster, Harrisburg and Pittsburg." The question then arises whether the local acts of 1862 and 1864 were repealed by the general act of 1901. The rule that a general statute does not repeal by implication a local act with different provisions still prevails; but as the rule is founded on a presumption of legislative intent, it will not apply when a contrary intent is clearly apparent: Com. v. Brown, 210 Pa. 29. Considering the question for decision in the light of these general principles, it is to be noticed, in the first place, that the act of 1901 concludes with the clause "All acts or parts of acts inconsistent with this act are hereby repealed." Inasmuch as the only acts then in existence which related to the subject of the act of 1901, namely, "the arrest and punishment of professional thieves, burglars and pickpockets," were local, it may be pertinently inquired, upon what would the repealing clause operate, if not upon these local laws? Presumably it was not introduced as a mere meaningless form, and while the presence or absence of such repealing clause cannot of itself be regarded as conclusive of the question for decision, it cannot be wholly disregarded in searching for the intent of the legislature. It is to be noticed, in the second place, that the act of 1901, in designating what for convenience may be called the forbidden places, includes some places that were not mentioned in the local acts, others that were mentioned, in some

instances describing the latter with more particularity, and omitting some places that were mentioned in the local acts. Another slight circumstance to be noticed is that under the local acts the convict was "to be kept at hard labor" while under the general act the imprisonment is "at labor." The local act provided that the convict might apply to a judge of the quarter sessions for a writ of habeas corpus, that upon the return thereof there should be a rehearing of the evidence, and that the judge might either discharge, modify or confirm the commitment. This provision is omitted from the act of 1901, and in place of it is substituted the provision, that the defendant may, within five days after conviction, appeal to the quarter sessions upon allowance of the court or a judge thereof upon cause shown. Taking all these things into consideration we are led to the conclusion that the legislature intended by the act of 1901 to revise the entire law relating to the subject-matter, and to prescribe a new, complete and general rule defining and punishing the offense, which should be applicable uniformly and at once in every part of the commonwealth. The principle involved in this conclusion is supported by many well-considered cases, amongst which may be mentioned Nusser v. Com., 25 Pa. 126; Johnston's Estate, 33 Pa. 511; Keller v. Com., 71 Pa. 413; Rhoads v. Hoernerstown Building & Sav. Assn., 82 Pa. 180; Best v. Baumgardner, 122 Pa. 17; Newbold v. Pennock, 154 Pa. 591. We have selected these cases out of a bewildering multitude of cases relating to the general subject of the repeal of statutes by implication, because in each of them the question of the repeal of a local law by a subsequent general law was under consideration. In each the local law was held to be repealed and in none of them was the legislative intent more apparent than it is in the act under consideration. We conclude that the act of 1862 as amended by the act of 1864 comes under the operation of the repealing clause in the act of 1901. It follows that neither the commitment itself, nor the commitment as supplemented by the

record of the magistrate and the agreement as to the place which the relator was frequenting or attending at the time of his arrest, was sufficient in law to warrant his detention. This is a question which could be raised by habeas corpus independently of the provision of the act of 1862: Ex parte Lange, 85 U. S. 163; Com. ex rel. Nuber v. Keeper of Workhouse, 6 Pa. Superior Ct. 420.

The judgment is reversed and the relator is discharged.