## Wick, Appellant, *v.* Alworth.

*Attachment execution—Executors and administrators—Service of writ outside of county—Statutes—Repeal—Acts of March 27, 1854, P. L. 214, and July 9, 1901, P. L. 614.*

An attachment execution issued against the widow of a decedent

34, (1916).]          Syllabus—Assignment of Error.

in the county where the decedent resided at his death and served upon the widow, as administratrix, in another county where she resided, by the sheriff of such county, specially deputized, is a proceeding within the meaning of the Act of March 27, 1854, P. L. 214, and the plaintiff is a party in interest within the meaning of the act.

The Act of July 9, 1901, P. L. 614, entitled "An Act relating to the service of certain process in actions at law and the effect thereof, and providing who shall be made parties in certain writs," repeals the Act of March 27, 1854, P. L. 214, entitled "An Act relative to bringing suits by creditors and others against executors, administrators, assignees and other trustees in certain cases," etc., in so far as the former act related to the service of an attachment execution outside the limits of the county in which it was issued.

A subsequent statute revising the whole subject matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on the principals of law, as well as in reason and common sense, operate to repeal the former.

Argued May 11, 1915. Appeals, Nos. 205 and 206, April T., 1915, by plaintiff, from order C. P. Butler Co. making absolute rule to set aside service of writ of execution in case of C. W. Wick, Cashier, v. Rachel Alworth, defendant, and Rachel Alworth, Administratrix of Joseph F. Alworth, deceased, Garnishee. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Rule to set aside service of attachment execution. Before REIBER, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was order making absolute rule to set aside service of attachment execution.

*John B. Greer,* with him *Thomas H. Greer,* for appellant.

*R. P. Scott,* for appellee.

OPINION BY RICE, P. J., March 1, 1916:

This is an appeal by plaintiff from an order making absolute a rule to show cause why service of attachment in execution and of rule with interrogatories should not be set aside. The attachment issued against Rachel Alworth, the defendant in the judgment, and Rachel Alworth, administrator of the estate of Joseph F. Alworth, deceased, as garnishee. The object of the attachment was to bind the $300.00 widow's exemption, which, pursuant to her election, had been duly set apart to her and charged on the real estate of the decedent, which subsequently was converted into money by a sale for payment of debts. The letters of administration to Rachel Alworth were issued in Butler County, wherein the decedent resided at his death and his estate was situated, but she resided in Venango County, and the attachment was served on her in the latter county. It is to be observed that her motion and the court's order were not directed against the writ itself, but against the service and return. As to the validity of the writ itself, it seems sufficient to refer to Section 10 of the Act of April 13, 1843, P. L. 235, which subjects to attachment any interest which any person may have in real or personal estate of any decedent by will or otherwise. It is to be observed, also, that it neither hurt nor helped the service that the person who made it was at that time sheriff of Venango County. It was not by virtue of his office that he made it, but by virtue of his being specially deputized to make it by the sheriff of Butler County to whom the writ was directed. The question is, whether the sheriff of the latter county, or his deputy, could lawfully serve it in Venango County. This involves (1) the construction of Section 1 of the Act of March 27, 1854, P. L. 214; (2) the repealing effect of the Act of July 9, 1901, P. L. 614. The former reads as follows: "That in all cases where executors, administrators, assignees or other trustees, shall not reside within the jurisdiction of the court having control of their accounts, proceedings may be had

and suits may be brought against them by creditors and others interested in said estates, in the counties where such accounts are to be settled, and process may be served by the proper officers of said counties or their deputies on said executors, administrators, assignees or other trustees, beyond the bounds of said counties, as if they resided therein, or upon any surety on their official bonds, with like effect as if they resided within the jurisdiction of the courts having control of their accounts."

1. The learned judge below, while not deciding the point, expressed a doubt whether the plaintiff comes within this act. There certainly can be no doubt that the word "proceedings" is broad enough to include an attachment in execution. But whether the plaintiff was "interested" in the decedent's estate, within the meaning of the act, is a question worthy of consideration. Giving to the word the narrowest meaning that can be ascribed to it in any connection, it well may be doubted whether he was so interested. But in arriving at the intention of the legislature, which is the object of all construction, it is to be borne in mind that there is a manifest advantage in having the suits and proceedings contemplated by the legislation brought in the county wherein the accounts of the executor, administrator, assignee, or trustee are to be settled, rather than in the county wherein he resides, if he be a nonresident, or happens to be at the time the process is issued or served. This consideration, which presumably was had in view by the legislature, applies with the same force to an attachment in execution in which an administrator is made garnishee as to the other proceedings which are embraced in the act. It has been said that the object of a remedial statute being to cure a weakness in an old law, to supply an omission, to enforce a right, or to redress a wrong. it is but reasonable to suppose that the legislature intended to do so as effectually, broadly, and completely as the language used, "when understood in its most extensive signification," would indicate: Endlich on Interpretation of

Statutes, Section 107. At any rate, whatever may be said of this quoted generalization, it is clear, upon principle and authority, that a remedial statute should be given a liberal interpretation in advancement of the remedy contemplated. Therefore, when a controlling word chosen by the legislature has two recognized meanings—one so extensive as to include all the objects equally within the mischief to be remedied and the reason of the remedy, the other so narrow as to exclude some of them—the former is to be preferred in the construction of the act, if thereby no unjust, inconvenient, or absurd general rule will result, unless there is something in the context or in the nature of the subject-matter or in legislation in pari materia to indicate that the legislature used the word in the latter sense. Thus viewing the words of the Act of 1854, the conclusion is reached that they are extensive enough in meaning to include an attachment in execution, and that the plaintiff, while not directly interested in the decedent's estate as creditor, legatee, devisee, or heir of the decedent, had such an interest through the defendant in the judgment in the settlement of the estate as would entitle him to the benefit of the remedial provisions under consideration.

2. The second question is as to the repealing effect of the Act of July 29, 1901, P. L. 614. It contains no express reference to the Act of 1854 by title or other particular description; but that is not conclusive of the question. "Repeal is wholly a question of legislative intent. Where, as here, no such intent is expressed but must be found, if at all, in necessary inference, certain general principles or presumptions have been established as aids in the discovery of the actual intent": Com., ex rel., v. Brown, 210 Pa. 29. A careful consideration of the scope of the act, as exhibited by its title and affirmative provisions, leads to the conclusion that the legislature intended to repeal the Act of 1854 so far as it related to the service of an attachment execution outside the limits of the county in which it was issued. It is true, the

scope of the act is limited to a regulation of service only: Park Bros. & Co., Limited, v. Oil City Boiler Works, 204 Pa. 453; Excelsior Savings Fund v. Cochran, 220 Pa. 634; Orient B. & L. Assn. v. Gould, 239 Pa. 335; Frick & Lindsay Co. v. Maryland, Etc., Co., 44 Pa. Superior Ct. 518. But that general subject, namely, the regulation of service, naturally embraces both the mode of service and the place of service; and it is apparent that the legislature so considered it and intended to provide a comprehensive system covering both parts of the general subject. Thus, in clauses 3, 4, 5, 9, service outside the county of the writs therein mentioned is authorized under certain circumstances; but, while the service of attachment in execution is expressly provided for and regulated, no mention is made anywhere in the act of that as one of the writs that may be served outside the county. Bearing in mind that the act is a comprehensive revision and codification of the law upon the general subject to which we have referred, the mention of writs which under special conditions may be served outside the county, and the omission to mention attachment in execution as one of the writs that may be so served, furnishes very strong inferential evidence of a legislative intent to supersede prior statutes which may have authorized it. But this conclusion does not rest alone on the maxim, expressio unius est exclusio ulterius, and the express repeal of all acts and parts of acts, general, special, or local, "in relation to the service of the writs hereinbefore set forth, inconsistent herewith," but has to support it the clear and unequivocal declaration of the legislature, "it being intended hereby to furnish a complete and exclusive system in itself relative to the service of all such writs." However desirable the provision of the Act of 1854, as we have construed it, it is impossible to avoid the conclusion that the legislature intended not to retain it in the "exclusive system in itself" which it established. "It has been said that a subsequent statute revising the whole subject-matter of a former one,

and evidently intended as a substitute for it, although it contains no express words to that effect, must, on the principles of law, as well as in reason and common sense, operate to repeal the former": Johnston's Est., 33 Pa. 511. While the repeal of statutes by implication is not favored, "Yet a subsequent affirmative statute is a repeal by implication of a former one made concerning the same matter, if it introduces a new rule upon the subject and is evidently intended as a substitute for the former law": SHARSWOOD, J., in Somerset and Stoystown Road, 74 Pa. 61. To the same effect and well illustrating the principle are: Rhoads v. Hoernerstown Building & Savings Assn., 82 Pa. 180; Bennett v. Norton, 171 Pa. 221; Com., ex rel., v. Keeper, 49 Pa. Superior Ct. 647; Reeve's App., 33 Pa. Superior Ct. 196; and a multitude of other Pennsylvania decisions. See, also, Sections 202, 384, Endlich's Interpretation of Statutes, which were quoted in part by Judge MORRISON in Reeve's Appeal.

It results from the foregoing, that the court committed no error in holding that the service of the attachment in execution could not be made outside the county.

The order is affirmed at the costs of the appellant.