## Commonwealth v. Sutton et al.

*John M. Ranck*, assistant district attorney, for Commonwealth.

*J. Boyd Landis, Bernard J. Myers, Jr.,* and *Bernard J. Myers*, for defendants.

APPEL, J., June 20, 1941.—On certiorari, by allowance of this court, there has been brought into this court the record of John E. Homsher, a justice of the peace, in a summary proceeding in which the above-named defendants were found guilty, on separate complaints, charging them with trespass upon prosecutor's farm upon which signs warning against trespass had been posted.

Argument in this matter was had before this court in banc.

In the petition for the allowance of the writ of certiorari it is averred:

"That the proceedings of the justice of the peace are defective, irregular and unlawful in the following particulars:

"(*a*) The prosecution was brought under an act of assembly which had been repealed long prior to the commission of the alleged offense.

"(*b*) The trespass signs alleged to have been posted were not offered in evidence, nor made a part of the record.

"(*c*) The trespass signs alleged to have been posted were insufficient as they were not signed by the owner or lessee of the property nor by any other person.

"(*d*) That the trespass signs alleged to have been posted were insufficient in that they recited that trespassers would be subjected to the penalties imposed by the Act of April 14, 1905, P. L. 169.

"(*e*) The witnesses against petitioners were not sworn or affirmed.

"(*f*) The record of the justice of the peace does not show that said justice of the peace found as a fact that defendants wilfully trespassed upon lands lawfully posted.

"(*g*) The sentence of the justice of the peace is illegal and unlawful as no penalty is provided by law as imposed."

Each complaint attached to this record against each of the defendants shows that Roy H. Weaver made affidavit on December 17, 1940, before John E. Homsher, justice of the peace, for Lancaster County, Pa., "that on the eleventh day of November, A. D. 1940, [naming each defendant with address] did at Strasburg Township, in said county, did trespass upon his farm upon which signs warning against trespassing had been posted, contrary to the law, peace and dignity of the Commonwealth of Pennsylvania." Each warrant issued in pursuance of said complaints commanded the constable to bring each defendant before said "justice of the peace at his office in Strasburg, Pa., to answer the Commonwealth upon a charge of trespassing upon the farm of Roy H. Weaver situate in the Township of Strasburg, Lancaster County, Pa., on the eleventh day

of November, 1940, founded on the complaint of Roy H. Weaver." Note, that the warrant did not contain any reference to posted signs warning against trespassing.

The transcript of the docket of the justice of the peace after reciting the issuing of the warrant states that Thomas H. Bair, constable, returns on oath the defendants, naming them.

The transcript of the docket next shows the following:

"County of Lancaster, *ss.:*

Before me, John E. Homsher, one of the justices of the peace in and for said county, personally appeared Roy H. Weaver, who being duly affirmed according to law, says that he is the lessee of certain cultivated lands in Strasburg Township, in said County; that he has public notices posted on said land, prohibiting trespassing, and that Clyde L. Sutton, Calvin G. Gutshall, Russell K. Lackey, and Glenn A. Lackey did on the eleventh day of November, 1940, trespass on his land for the purpose of hunting."

From the transcript it does not appear on what date the affidavit was made. This affidavit does not use the same words as are set forth in the complaint and, while the transcript does not specifically say that a hearing was held at which witnesses were sworn and examined, the transcript does indicate that on January 6, 1941, defendants appeared in person and by counsel for the purpose of this case. We are assuming that the above, which appears in the form of an affidavit, was the testimony under oath made by the prosecutor, Roy H. Weaver, at the hearing on January 6, 1941.

"There is a presumption in favor of the regularity of proceedings before a magistrate": Commonwealth v. Greene, 40 D. & C. 546, 551.

The transcript continues: "Complaint is read to defendants and counsel questions plaintiff, who identified each one of the defendants as one of the persons who

trespassed on his land for the purpose of hunting on the eleventh day of November, 1940. Plaintiff also said that printed notices were prominently posted, warning all persons from trespassing thereon. He testified that one Mr. Zimmerman had asked permission from him for the four defendants to hunt on his land and that this permission was refused. He testified that in fifteen minutes to one-half hour later he heard shooting and upon investigating found the four defendants trespassing and hunting upon his land.

"Bernard J. Myers, Jr., counsel for defendants, asked that the suit be dismissed because prosecution was not brought under the Act of 1939. Request was refused.

"Counsel asked that the suit be dismissed for the reason that the notices against trespassing had not been signed by the owner or lessee of the land posted. Request was refused.

"Counsel offered in evidence photographs of notices showing trespass signs had not been signed by land owner or lessee. Defendants testified that notices had not been seen by them, notwithstanding that the photographs submitted had been taken by them.

"Each defendant admitted that he had trespassed upon land of prosecutor, but pointed out that they did not know they were on land of his, but thought they were on land of Ira J. Hostetter.

"Having heard and considered the evidence, I, the said justice, do adjudge the said Clyde L. Sutton, Calvin G. Gotshall, Russell K. Lackey, and Glenn A. Lackey guilty of the offense charged against them in the above complaint and they are hereby convicted of the same, and I do sentence them to pay costs of this suit amounting to $9.25, and in addition pay a penalty of $10, said penalty to be distributed as directed by the act of assembly."

This is a summary prosecution and the essentials of a summary conviction are "that there must be an in-

formation and charge against the person, then he must be summoned or have notice of such charge and have an opportunity to make his defence; and the evidence against him must be such as the common law approves of, unless the statute expressly directs otherwise; then if the person is found guilty there must be a conviction, judgment and execution, all according to the course of the common law, directed and influenced by the special authority given by the statute; and in conclusion there must be a *record* of the whole proceedings, wherein the justice must set forth the particular manner and circumstances, so as if he be called to account for the same by a superior court, it may appear that he has conformed to the law, and not exceeded the bounds prescribed to his jurisdiction." The essential part or particular substance of the whole testimony should appear in the record; the effect of the result is insufficient: Commonwealth v. Borden, 61 Pa. 272. The report of this case prints in full the record of the magistrate.

It is said that a magistrate need not follow the language of the act under which the prosecution is instituted but that it is sufficient if the return contains sufficient information to enable the district attorney to frame an indictment: Commonwealth v. Frescoln et al., 11 Lanc. L. R. 161; Commonwealth v. Walters, 43 Lanc. L. R. 286.

"An information is sufficient if it plainly states and identifies in ordinary words the offense with which the defendant is charged; it is not necessary that it charge the offense with the detail and technical accuracy required in an indictment": Commonwealth v. Grego, 116 Pa. Superior Ct. 295; Commonwealth v. Huth, 28 D. & C. 407; Commonwealth v. Afton, 33 D. & C. 709. See also Commonwealth, ex rel. Seibert et al., v. Manager of House of Correction, 10 Dist. R. 371.

The above case and many others refer to the sufficiency of the magistrate's record to enable the district

attorney to frame an indictment. In a summary proceeding no indictment is contemplated. The intention of the proceeding is that it shall be begun, continued, and ended in a proper legal manner by the magistrate. We are of the opinion, therefore, that complaints, warrants, and docket entries in a summary proceeding must be more definite, specific, and precise than in preliminary proceedings which contemplate the completion of the proceedings in a higher court. "In cases of summary conviction the strictest observance of the legal requirements to sustain a conviction will be required": Commonwealth v. Seip, 26 Northamp. 386; Commonwealth, etc., v. Davison, 11 Pa. Superior Ct. 130; New Castle v. Genkinger, 37 Pa. Superior Ct. 21; Commonwealth ex rel. v. Keeper of County Prison, 49 Pa. Superior Ct. 647; Commonwealth v. Moller, 50 Pa. Superior Ct. 366.

In Commonwealth v. Gelbert, 170 Pa. 426, the information charged defendant that on May 6, 1894, she had her place of business open for business, etc., but did not aver that that date was Sunday, and the act appears to be in violation of section 1 of the Act of April 2, 1794. The court held (headnote) :

". . . the complaint is the foundation of the proceedings, and it must distinctly state that the work mentioned in it was performed on Sunday, in order to establish the jurisdiction of the magistrate and the validity of his warrant. The complaint being in the nature of an indictment must contain a direct and positive charge against the defendant, with a complete statement of the offense; if omitted there, it cannot be supplied by the warrant, docket entries, reference to the almanac or the evidence at the trial."

The complaint must also contain a direct and positive charge against defendant and not merely facts amounting to a presumption of guilt, however sufficient such facts may be as prima facie evidence against him.

In Commonwealth v. Phelps, 170 Pa. 430, the complaint failed to show in what county the acts complained

of were committed, which the court held to be fatally defective. "The foundation will not support the super-structure."

In Groezinger v. Lackawanna County, 19 D. & C. 589, on the charge of disorderly conduct under the Act of May 2, 1901, P. L. 132, the court held "that the complaint did not aver that the alleged disturbance was wilfully made," the use of the word wilfully apparently being a requirement of the act of assembly, and the court said: "Hence there was a material variance as between the terms of the complaint and the grounds of jurisdiction which the alderman had power to enter-tain. That was necessarily fatal to the judgment. . . ."

In Commonwealth v. Peck, 2 D. & C. 498, the court held that "the notice did not follow the language of the statute, but the notice posted contained the essential information that the lake was private property, warn-ing all persons from trespassing thereon, and that vio-lators would be prosecuted according to law. This was such a substantial compliance with the Act of Assembly as to give the defendant notice." In this case defend-ant did not contend that he did not know that this was private property and that use of the lake was forbidden without express permission.

Neither the complaints, nor the warrants, nor the transcript of the justice of the peace in the instant case, set forth any citation of any specific statute which was violated. The Act of April 14, 1905, P. L. 169, was particularly repealed by section 1201 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §4101, effective September 1, 1939, 18 PS §4102. Parenthetically, it may be noted that the Act of May 23, 1923, P. L. 326, which amends the first section of the Act of April 14, 1905, P. L. 169, 18 PS §3311, by adding the phrase "Provided, That the provisions of this act shall be con-strued to include State institutions and land appurte-nant thereto" is not specifically included in the schedule of the acts of assembly which are repealed by section 1201 of The Penal Code.

In Commonwealth v. Nichols, 38 Pa. Superior Ct. 504, there was a complaint that defendant "did unlawfully and maliciously take and catch from the waters of the Susquehanna river, by means of an outline, a quantity of game fish, to wit: Five wall-eyed pike, the said game fish being then and there caught on the said outline and not returned to the said waters by the said Perley Nichols, according to law contrary to the Act of Assembly in such case made and provided". The defendant on a hearing was found guilty by a justice of the peace and fined and thereupon appealed to the Common Pleas Court of Bradford County. Fanning, P. J., filed his opinion sustaining the proceedings, stating, inter alia:

"It is objected that no specific section of any act of assembly is referred to as having been violated. 'It is essential that a summary conviction shall contain a finding that a special act has been performed by the defendant; that it shall describe it in such a way as to individuate it, and show that it falls within an unlawful class of acts': Com. v. Nesbit, 34 Pa. 398.

"It is the better and safer practice in proceedings of this nature to refer in the complaint to the particular act alleged to have been violated. We cannot, however, say that the omission in this case is fatal. Here a specific charge is made and circumstances given. The act of the defendant, a single offense, is fully described in the complaint, and if committed, as was found by the magistrate, clearly offended against the act of assembly to which reference has been made.

"It was held in Com. v. Burkhart, 23 Pa. 521, 'That when the charge in the complaint and summons is so specific as to give the defendant fair notice of the substance, time and place of the offense charged . . . it ought to be regarded as sufficient. . . .' "

On appeal the Superior Court filed a per curiam opinion, stating: "We agree with the learned judge below that, although the information did not specify the act

and the section thereof alleged to have been violated, it sufficiently charged a violation of that clause of the eleventh section, [of] the Act of May 29, 1901, P. L. 302 . . ."

The alleged offense in this case occurred on November 11, 1939; therefore any summary proceeding for the alleged offense must be sustained, not under the repealed Act of 1905, but under the provision of section 954 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §4954, providing as follows:

"Whoever wilfully enters upon any land, which the owner has caused to be prominently posted with printed notices that the said land is private property, and warning all persons from trespassing thereon, under the penalties provided in this section, shall, upon conviction thereof in a summary proceeding, be sentenced to a fine not exceeding ten dollars ($10), together with the costs of prosecution, and in default of payment of said fine and costs, shall be committed to jail for one (1) day for each dollar of fine imposed."

The Penal Code of 1939, sec. 1104, 18 PS §5104, provides: "In all cases where a remedy is provided or duty enjoined, or any thing directed to be done by the penal provisions of any act of assembly, the direction of said act shall be strictly pursued. . . ."

It seems, therefore, that an analysis of section 954 of The Penal Code is necessary. However, before entering into that analysis we refer to the opinion of Mr. Justice Patterson in Lower Nazareth Township Supervisors' Appeal, 341 Pa. 171, 175:

"It is a well settled rule of statutory construction, codified by section 52 of the 'Statutory Construction Act' of 1937, P. L. 1019, subsection (4), that 'where in a later act the legislature uses the same language as in a prior cognate statute, which had been construed by us, the presumption is that the language thus repeated is to be interpreted in the same way it previously

had been when considering the earlier statute' : Buhl's Estate, 300 Pa. 29, 32."

Commonwealth v. Burford, 38 Pa. Superior Ct. 201, affirmed by a per curiam opinion by the Supreme Court as reported in 225 Pa. 94, construing the Act of 1905, is in principle applicable to the section of The Penal Code now under consideration. Referring to trespassing upon land posted as private property, the court said, page 203:

"The subject was not new; trespass upon land which was private property had for very many generations been recognized by the common law as unlawful, a private injury or wrong. Blackstone defines it, book III, chap. 12, p. 209, thus: 'It signifies no more than an entry on another man's ground without lawful authority, and doing some damage, however inconsiderable, to his real property. For the right of meum and tuum, or property in lands, being once established, it follows as a necessary consequence that this right must be exclusive; that is, that the owner may retain to himself the sole use and occupation of his soil; every entry, therefore, thereon without the owner's leave, and especially if contrary to his express order, is a trespass or transgression.' And again, on p. 214 of the same chapter: 'Every trespass is willful, where the defendant has notice, and is especially forewarned not to come on the land'. The injury or wrong was a private one, and the remedy was in an action of trespass by the owner . . . what the legislature here declared to be unlawful was a willful trespass upon land which had been posted by the owner in the manner indicated by the statute. It certainly was not the legislative intention to prohibit every entry, whether with or without right, upon land which had been thus posted; and give to the soil a sacred character. In seeking the legislative intention it would not be reasonable to confine the inquiry to the one clause of the section made up of these words, 'It shall be unlawful for any person will-

fully to enter upon any land', which has been posted. . . . When the owner has posted upon the land notice warning all persons against trespassing thereon, an intentional trespass shall render the trespasser subject to the penalty imposed by the statute."

The section of the act under discussion clearly and plainly indicates that one of the essential acts constituting a violation of the provisions of this section is that the accused must be guilty of a wilful trespass. A simple, unintentional entry upon posted lands is not an offense. It would be better practice therefore for the complaint to contain specifically the word wilful or wilfully as used in this section of the act (which was not done in this case). We do not now specifically find, however, that the absence of such word in the complaint may in every case be harmful. But it does appear to us that, following this section of the act, the record of the magistrate in his findings and conviction should affirmatively show that defendant, if found guilty, and convicted, should be found to be guilty of the offense of wilful trespass or entry, as well as the other essentials of the offense. The transcript of the record before us in this case does not meet this requirement.

At the argument of this case considerable stress was laid on the fact that the signs had not been signed by the owner or lessee of the property nor by any other person. In this respect we were referred to two lower court decisions: Commonwealth v. Baker, 19 Westmoreland 59, and Commonwealth, ex rel. Shelley, v. Zdnosky, 21 Dist. R. 1052.

The Baker case was an appeal from a summary conviction of the defendant on the charge that he "did then and there unlawfully and wilfully trespass" on posted lands. After a hearing de novo, the court filed its opinion stating:

"There seems to be no doubt about the defendant having trespassed upon the land of the Rolling Rock Club. The question for us to decide from this testimony is

whether or not he did so unlawfully and maliciously. In order to sustain a conviction under this Act it must appear affirmatively that the trespass complained of was wilful.

"In the case of Commonwealth vs. Wise, 31 Dauphin County, 319, the Court held: 'To sustain a conviction under the Act, the trespass must not only be wilful, but intentional.'

"In 38 Cyc. Section 1179, the following appears: 'Criminal intent is an essential element of the statutory offense of trespass even though the Statute is silent as to intent, and if the act prohibited is committed in good faith under claim of right, color of title, accidentally, or in ignorance, no conviction will lie."

In this case there was testimony that defendant had permission to hunt on a certain tract of 1,400 acres in a mountain country with no fences to indicate property lines; that he made inquiry and was told that he was on the property on which he had secured permission to hunt; "that the trespass notices posted by the Rolling Rock Club were not signed and did not in any way indicate by whom the notices were posted. As careful as one might be, it would be a very simple matter for one to wander innocently on the lands of another under these conditions". The court held that "the Commonwealth has failed to show that the trespass was wilful or intentional and, therefore, unlawful." In our view of this case, it does not affirmatively decide that trespass notices must be signed or that the owner's name must appear thereon in order that the signs shall comply with the act of assembly; but the lack of signature apparently entered into the consideration as to whether the trespass was intentional or wilful. If defendant had seen a notice which had been signed, then he would have known that he was not on the land on which he intended to be. But in the absence of any such designation of ownership by a name or a signature on the notice, he was not held to be a wilful trespasser.

In the Zdnosky case, 21 Dist. R. 1052, where the Pennsylvania Coal Company was the owner of the land and Joseph J. Jermyn was the lessee in possession and the trespass notices were signed by "Penn Game & Fish Association" (whose connection with this case does not appear), as we read the case, all that the court decided was that notices were not posted by the "owner" within the meaning of the acts of assembly, and the case is not authority for the statement that notices must be signed. The gist of the matter is that lawful trespass notices must be posted by the owner, who may be the lessee or some other person in lawful possession, custody, or control of the property under the owner, and the posting of such notices must be proven. Of course, if the owner's name appears on the notice that may be prima facie evidence of the fact that they were posted by the owner, and that the land is claimed to be the private property of such owner as against trespassers, and might, on trial, eliminate a certain amount of evidence to prove the fact that the owner posted the notices, and that the land on which the notices were posted was claimed to be private property of such owner.

A photograph of the printed trespass notices involved in this case, submitted to this court with the record shows:

"Notice
This Land Is
Private
Property
Trespassing Not Allowed.
All persons are warned against trespassing hereon under the penalties provided by the Act of April 14, 1905, and other laws."

While notices generally similar to this notice have been held to be proper notices under the Act of 1905, now repealed, we are not convinced that this notice is a proper printed form of trespass notice under the requirements of section 954 of The Penal Code.

In our opinion section 954 of The Penal Code, now under discussion, provides that the signs to be posted on the land must contain three specific items of information: (1) That said land is private property; (2) a warning to all persons from wilfully trespassing thereon, and (3) "Under the penalties of this section." The first two required clauses of the notice appear to need no amplification. But the third clause "under the penalties provided in this section," which we find must be a part of the notice, may need some discussion. The signs which appear to have been posted in this case do not contain the specific phrase "under the penalties provided in this section." The signs contain the phrase "under the penalties provided by the Act of April 14, 1905, and other laws." The signs in question, it must be remembered, contain a reference to an act of assembly which at the time of the alleged offense had been repealed. If we omit from the sign before us the words "Act of April 14, 1905, and" as surplusage, then the sign would read "under the penalties provided by other laws." In our opinion this printing on the sign would not be sufficiently strict compliance with section 954 of the act in question. The notice is defective and the land was not properly or lawfully posted in accordance with the provision of this section of the act. It is a prerequisite to any prosecution for a violation of the act that the land be properly and lawfully posted and proper proof of this must appear on the record of any proceeding. The record in this case does not find that the land was properly and lawfully posted and could not have contained such finding because such posting was not done.

We are not called in this case to decide whether a posted sign would be sufficient if it contained merely the phrase "under the penalties provided in section 954 of The Penal Code of 1939, P. L. 872," or whether the signs should go further and, after reciting the last quoted phrase herein, should set forth fully what are the penalties provided in the words of the statute. But

it would seem to us that the better practice would be to make the printed signs ample, definite, particular, and specific, following closely the requirements of the act and to set forth the provisions and penalties of the section of the act, although that has been held to be sufficient in many cases under the Act of 1905.

In the present case, defendants alleged, according to the transcript, that they did not know they were on the property of the prosecutor, that they thought they were on the property of Ira K. Hostetter, a neighbor, on whose property, apparently, they had been lawfully, and were not wilful trespassers. Even had they read one of the signs offered in this case, which was unsigned, following the Zdnosky case above, it might have been difficult for the Commonwealth to prove affirmatively, beyond a reasonable doubt, that these defendants were wilful trespassers on the Weaver land. On the other hand, believing that they were on the Hostetter land, if they had read a trespass notice on which the prosecutor's name had appeared they would have had instant notice that they were no longer on the Hostetter land but were on other land, private property, claimed to belong to the prosecutor and that, if thereafter they remained thereon, they would be wilful trespassers. For this reason, while finding that trespass notices are not required by the act of assembly to be signed, and no court should judicially determine that they must be signed, nevertheless, as a practical matter and affording prima facie evidence on a summary proceeding it will be much better practice if the owner's name appears thereon.

We have examined many cases in preparing this opinion, and do not find any case which definitely establishes a rule that trespass notices must be signed or the owner's name appear thereon. In most of the cases it appears that the owner's name (or some person lawfully in possession of the land under the owner, as lessee etc.) appears on the notices. It appears, however, that

this is not because of any legal requirement but as a matter of practical expediency for the reasons hereinbefore stated.

We have discussed this matter at considerable length, because, while this particular case directly involves only one landowner and four defendants, the whole question is one of great importance to the owners and occupiers of our farm lands, who need protection from wilful trespassers, particularly during the hunting seasons. Each year thousands of trespass notices are posted on our farm lands and it is notorious that not a few hunters are not careful, in using their firearms, of farmers' fences and gates and property generally, as the farmers expect them to be. It is essential that proper lawful signs be posted, not only that the farm owner or occupier may be protected but also that the law-abiding hunter may be protected from becoming guilty of a criminal offense by being a wilful trespasser. Our legislature has made a change in our statute laws in regard to wilful trespassing. It would be better practice to discard signs printed in accordance with a repealed act of assembly and to observe the requirements of the act of assembly currently in force, so that the rights, duties, and privileges of all persons will be fully protected.

We, therefore, come to the following conclusion in regard to the particular specifications of error set forth in defendants' petition for certiorari:

(*a*) That it does not appear from the record that the prosecution was brought under a repealed act of assembly. While the record does not show under what act of assembly it was brought, and it is not required to indicate the act, nevertheless, the nature of the complaint, warrant, and the testimony indicates that the only act of assembly under which it could have been brought was section 954 of The Penal Code of 1939.

(*b*) Defendants have supplied the record in any alleged deficiency in the record by producing a photo-

graph of the sign, as a part of this record, which we have considered. The record of the justice of the peace in this case will not be disturbed for this reason of defendants' petition.

(c) The posted trespass notices do not need to be signed by the owner or lessee of the property. The record of the justice of the peace would not be disturbed for this reason. But the better practice, as set forth above, indicates the advisability of a name appearing on posted trespass notices.

(d) The trespass notices which were posted were insufficient and not in accordance with section 954 of The Penal Code of 1939.

(e) From our analysis of the transcript of the docket of the justice of the peace we are of the opinion that the prosecutor was affirmed at the magistrate's hearing.

(f) The transcript of the docket of the justice of the peace does not show that testimony was produced to show directly or by inference that defendants wilfully trespassed upon lands lawfully posted, or that he found defendants guilty of a wilful trespass in accordance with the act of assembly.

(g) We are of the opinion that the penalty imposed by the justice of the peace was that provided by law, but that his finding, conviction, and sentence were unauthorized from our analysis of the record.

### Decree

And now, June 20, 1941, for the foregoing reasons, it is ordered, adjudged, and decreed that the judgment of John E. Homsher, the justice of the peace in this case, is not sustained but is hereby set aside.