## The Pennsylvania Company for Insurance on Lives and Granting Annuities, Trustee and Administrator d. b. n. c. t. a. of the Estate of Charles H. Baker, deceased, *v.* The Franklin Fire Insurance Company of Philadelphia, Appellant.

*Equity—Jurisdiction—Corporation—Stock transfer—Forgery.*

A corporation is a trustee of the capital of all its shareholders, and if it illegally cancels and destroys certificates of stock, relying upon forged powers of attorney, it may be compelled by a court of equity to issue to the owner of the certificates other certificates for an equal amount of stock.

To oust jurisdiction in equity, the remedy at law must be complete; that is, it must attain the full end and justice of the case; it must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time, and in the future.

*Fraud—Forgery—Transfer of stock—Corporation—Negligence.*

The rule that where one of two innocent persons must suffer a loss from the fraud of a third, the loss must be borne by the one whose negligence enabled the third person to commit the fraud, does not apply to a case where a son by forging his father's name to a power of attorney secures a transfer of stock, and where the only failure of duty alleged on the part of the father is the fact that he entrusted to his son the key of the box in which the certificates of the stock were kept.

*Corporation—Wrongful transfer of stock—Power of attorney.*

On a bill in equity to compel a corporation to issue certificates of stock in place of those which it had wrongfully canceled, relying upon a power of attorney to which a son had forged his father's name, a master's finding of fact that the father had never authorized the son to sign his name to transfers of stock, which has been confirmed by the court below, will not be set aside by the Supreme Court.

Even if a father has authorized his son to write his name to a power of attorney authorizing a sale or transfer of a particular security, that fact will not warrant the inference that such authority has been given in another case where the son had signed his father's name.

*Equity—Trusts and trustees—Negligence.*

It seems that where the securities of a trust estate have been unlawfully transferred by a dishonest agent of a negligent trustee, such negligence does not estop the cestuis que trustent from successfully asserting in equity their right to the property.

Argued March 22, 1897. Appeal, No. 432, Jan. T., 1896, by defendant, from decree of C. P., No. 4, Phila. Co., June T.,

1893, No. 772, on bill in equity. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to compel a corporation to issue certificates of stock in place of others which it had wrongfully canceled, relying upon forged powers of attorney.

The case was referred to John A. Clark, Esq., as master, who reported in favor of the plaintiff.

Exceptions to the master's report were overruled in an opinion by THAYER, P. J.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to the master's report.

II. *La Barre Jayne*, with him *Arthur Biddle* and *George W. Biddle*, for appellant.—A court of equity has not jurisdiction to entertain the bill, there being an adequate remedy at law: Dorrow v. Kelly, 1 Dallas, 142; Bradley v. Chester Valley R. R., 36 Pa. 141; Gilder v. Merwin, 6 Whar. 541; Act of April 15, 1858, P. L. 267; Act of April 5, 1859, P. L. 359; North Penna. Coal Co. v. Snowden, 42 Pa. 488; Tillmes v. Marsh, 67 Pa. 507; Pittsburg & Allegheny Drove Yard Co.'s App., 123 Pa. 250; Booher v. Browning, 169 Pa. 18; Caldwell v. East Broad Top R. R., 169 Pa. 99; Smaltz's App. 99 Pa. 310; Paton v. Clark, 156 Pa. 49; Kirkpatrick v. McDonald, 11 Pa. 387; Brush Electric Light Co.'s App., 114 Pa. 574; Bierbower's App., 107 Pa. 14.

The specific performance of the transfer of a chattel is rarely decreed, and never unless circumstances arise which render the verdict of a jury an inadequate remedy: Stayton v. Riddle, 114 Pa. 464; Foll's App., 91 Pa. 434; Strasburg R. R. Co. v. Echternacht, 21 Pa. 220; Sank v. Union Steamship Co., 5 Phila. 499; Phila. & Reading R. R. v. Stichter, 11 W. N. C. 325; Roland v. Bank, 135 Pa. 598; Adams's App., 113 Pa. 455.

John R. Baker, Sr., was guilty of gross and culpable negligence in the management of the estate committed to his charge, and this negligence was the proximate and actual cause of the defendant's action in allowing the transfers complained of in the bill to be made: Young v. Grote, 4 Bing. 253; Bank of

Ireland v. Charities, 5 H. of L. 389; Swan v. N. B. Australasian Co., 7 Hurls. & Nor. 601; Bank of England v. Vagliano (1891), App. Cases, 107; Manufacturers' Bank v. Morgan, 117 U. S. 96.

*John Hampton Barnes, Geo. Tucker Bispham* and *John G. Johnson,* for appellee.—The cestuis que trustent are not bound by the negligence and laches of their trustee in the care of their estate and securities: Bohlen's Est., 75 Pa. 305; Guillou v. Peterson, 89 Pa. 163.

All of the cases cited in support of the proposition by the appellant are those in which the acts alleged to estop or bar the plaintiff were in his own right, about his own property; and this distinction renders inapplicable the case of Garrard v. Haddan, 67 Pa. 82.

The case of Young v. Grote, has recently received very full consideration in the case of Scholfield v. The Earl of Londesborough (1896), Appeal Cases, 514. See also, Hill v. Jewett Pub. Co., 154 Mass. 172.

Certificates of stock are not property. They are the evidence of the holder's title to membership in the company, and to a share of its property: 2 Thompson on Corporations, 1731; Roberts's App., 85 Pa. 84; Cook on Stockholders, sec. 192; Farrington v. Tennessee, 95 U. S. 686; Dewing v. Perdicaries, 96 U. S. 193; Bayard v. F. and M. Bank, 52 Pa. 232.

A bill in equity may be filed by a shareholder against corporations to enforce his rights under this trust against the corporation as his trustee: Midland Ry. Co. v. Taylor, 8 H. of L. 751; Johnston v. Renton, L. R. 9 Eq. 181; Barton v. Ry., L. R. 38 Ch. Div. 458; Bank v. Seton, 1 Peters, 299; Telegraph Co. v. Davenport, 97 U. S. 369; St. Romes v. Cotton Press Co., 127 U. S. 614; Penna. R. Co.'s App., 86 Pa. 80; Hall's App., 112 Pa. 42; Pratt v. Taunton Copper Co., 123 Mass. 110; Chicago Edison Co. v. Fay, 62 Ill. App. 55; Blaisdell v. Bohr, 68 Ga. 56; Read v. Telephone Co., 93 Tenn. 482; Cushman v. Thayer Mfg. Co., 76 N. Y. 365; Harrell v. Cattle Co., 73 Texas, 612; Spencer v. James, 31 S. W. Rep. 540.

OPINION BY MR. JUSTICE DEAN, April 19, 1897:

Charles H. Baker, a resident of Philadelphia, died in September, 1872, possessed of an estate valued at $700,000. He dis-

posed of it by a will, of which he appointed his widow, Elizabeth, and his two sons, John R. and Charles H., executors, and also constituted them trustees of a large residuary estate for his grandchildren. Charles H. died in 1887. Elizabeth, widow of testator, although living in 1890 at the commencement of these proceedings, owing to her advanced age and physical infirmities, had for several years ceased to perform any duties as executrix or trustee; thus, leaving the entire management to her son, John R. Baker, who at that date, 1890, had reached the age of seventy-two years. For the transaction of the business of the estate, an office was maintained in the city, which was occupied most of the time by John R. Baker, Jr., son of the executor; he was thirty-eight years of age in 1890, the date of the filing of this bill, and for eight years had assisted his father as an active agent in conducting the affairs of the estate. Although a member of the bar, he had never practised; his principal business was that of a speculator and dealer in stocks, in which, so far as success is measured by quick and large gains in money, he had, for a time, been successful. The father reposed confidence in the son; gave him power of attorney to oversee and manage his bank accounts as executor; also, to collect the income of the many securities of the estate. He also intrusted him with the key to the box in which the securities of the estate were kept. The box was in a safe of a trust company, to which the son had right of access. The large speculations of the son in the stock market eventually turned out badly, and in the panic following the Baring failure in 1890 he was financially ruined and fled the country. It was then discovered, that, he had, by means of false representations as to his authority, and by forgery of his father's name as executor to powers of attorney, appropriated and lost a very large part of the securities belonging to the trust estate. Among these were fifty shares of the capital stock of the Franklin Fire Insurance Company, this appellant, the market value of which, at that time, being about $400 per share. The certificates numbered 6, 13, and 31 had been issued to Charles H. Baker in 1832, 1839 and 1840, and had stood in his name on the books of the company until 1890, when they were transferred by the company to bankers and brokers of John R. Baker, Jr.; the old certificates being taken up and canceled, and new ones issued by the company to the transferee. The authority to the

company for the transfer was the production of the original certificates, accompanied by three powers of attorney purporting to be executed by Elizabeth Baker and John R. Baker, executors. These powers of attorney were forgeries. Upon petition of the surviving executors and trustees, the letters testamentary to them were, on December 8, 1890, vacated, and letters with the will annexed were issued to this plaintiff, who on the facts stated filed this bill against the company for a cancelation of the transfer and the reissue to it of a new certificate for the fifty shares of stock; or, for an order on defendant to pay to it the value of the same with interest. The defendant, in answer, denied the fact of forgery, and the right of plaintiff under all the facts to a decree. The case was referred to John A. Clark, Esq., as master, who heard the testimony fully and, on his findings of fact and conclusions of law, suggested a decree that defendant be ordered to deliver to plaintiff a new certificate for the fifty shares, or pay to plaintiff the value of the same with interest from January 10, 1891. To this report numerous exceptions were filed by defendant, which were overruled by the court below, the report of the master confirmed, and decree made as suggested by him. From that decree we have this appeal. Appellant places of record thirty-three formal assignments of error which, it is conceded in the argument, in substance, are covered by three propositions: 1, equity was without jurisdiction to entertain the bill; 2, defendant's action in making the transfer was caused by the gross and culpable negligence of John R. Baker, the executor and trustee, therefore he should suffer the loss if the powers of attorney were forged or fraudulent; 3, the evidence did not show the signatures of the executors, if written by John R. Baker, Jr., were so written without the authority of the executors.

As to the first proposition, unquestionably, plaintiff, on the facts, might have brought a common law action against the defendant, and have recovered the damages sustained by the unauthorized transfer of the stock; and if the sole prayer for relief here was for a money decree, such remedy by plaintiff's admission, would have been adequate, because equity, in granting the prayer, would give nothing further than the event of a common law action; but this prayer is in the alternative. The primary relief sought by plaintiff is a restitution of the partic-

ular chattel of which the estate has been defrauded. The defendant is a trustee of the capital of all its shareholders; the evidence of such trusteeship to the contributor who has paid his money is the trustee's stock certificate; this paper defendant has illegally canceled and destroyed, thus severing all connection between the shareholder and the trustee, and depriving him of all rights and privileges as a shareholder. He does not want money, but insists on his rights under his contract of membership in the corporation, and the privileges, present and future, to which he is entitled by virtue of membership; and he asks this, not from strangers to his contract who owe him no duty in this particular, but from his trustee, who, though bound to protect his right, yet has, without authority, destroyed the evidence of it. An action at law in this view would be an inadequate remedy, and he is not bound to resort to it. To oust jurisdiction in equity, " it (the remedy) must be complete; that is, it must attain the full end and justice of the case; it must reach the whole mischief and secure the whole right of the party, in a perfect manner, at the present time, and in the future : " Story's Equity Juris., sec. 33. And on this ground equitable jurisdiction, in suits by shareholders against the corporation have, on like prayers, been frequently sustained, both in the English courts and our own: Barton v. Ry. Co. L. R., 38 Ch. Div. 458; Telegraph Co. v. Davenport, 97 U. S. 369; Conyngham's Appeal, 57 Pa. 474; Brush Electric Light Co.'s Appeal, 114 Pa. 574. We affirm the jurisdiction of equity in this case, on the ground that defendant is a trustee for its shareholder, the estate of Charles H. Baker, as to these fifty shares of capital stock ; that its legal duty was not only to properly manage and protect the amount of capital contributed by Charles H. Baker, but also to protect his title thereto, so far as to permit no fraudulent or unauthorized transfer of such title on its books, or any unauthorized cancelation of his certificate. In all of the cases cited by appellant where equity refused to take jurisdiction because there was an adequate remedy at law, the real contention was between antagonistic claimants to shares of stock on contracts of sale or transfer between the parties.

To sustain the second assignment it is sought to bring the case within the principle that, " Where one of two innocent persons must suffer a loss from the fraud of a third, the loss

must be borne by the one whose negligence enabled the third person to commit the fraud." In the leading case, Young v. Grote, 4 Bing. 253, decided seventy years ago, this rule was held applicable to a transaction between a bank and its customer. There the drawer of a check signed a number of them and gave them to his wife to be by her filled in with the amounts to be paid different parties. She filled in one with the words, "fifty pounds, two shillings," in the middle of the line; "fifty" commencing with a small "f," with ample space before it for the words "three hundred and," which were fraudulently inserted by the party to whom the check was delivered. Being cashed by the banker, the court held the loss must fall on the customer, saying: "Undoubtedly, a banker who pays a forged check is in general bound to pay the amount again to his customer, because in the first instance he pays without authority, . . . . yet if it be the fault of the customer that the banker pays more than he ought, he cannot be called on to pay again." This case has been followed, both in England and the United States, notably by this court in Garrard v. Haddan, 67 Pa. 82. But while some of the decisions carry the rule beyond its original scope, the later ones restrict it to cases between a bank and its customers. Young v. Grote was reconsidered in Scholfield v. Earl of Londesborough, Appeal Cases, 514, (1896) and in Bank of Ireland v. Evans's Charities, 5 H. of L. 409, and its authority limited to cases where the customer has misled his bank by want of ordinary caution in drawing his check, bill or note. And doubtless the rule in some cases would apply to other than strictly commercial transactions. If in the case before us, the father, being the individual owner of stock, had executed and delivered to the son powers of attorney authorizing its transfer, leaving blanks for the description of the stock to be afterwards filled in by the son, with verbal directions for the transfer of a particular stock other than that of the Franklin Fire Insurance Company, and the son had fraudulently filled the blank with the description of the last named stock, it might be truly said, the father's neglect having caused the loss he alone should suffer. The signatures being genuine, the father alone could detect the fraud, and he having conferred on the son, as concerned third persons, unlimited power to defraud, in justice, he alone should suffer. But the supposed case is not

the one before us. The distinction between the one in hand and Young v. Grote is not only made clear by the recent limitation of that rule, but also because there never was a time when that principle was applicable to these facts. Under the rule of the company, the transfer could only be made under the authority of the owner, evidenced by a power of attorney, and on the production of the original certificate. Assuming, what was without doubt the fact, that both parties were innocent of any intentional fault, what unintentional failure in duty caused the loss? Because, unless in the particular transaction with reference to this defendant, the executor, either did something he ought not to have done or did not do something he should have done, there was no neglect. Tested by this standard, where was the neglect of the father? It is answered, he intrusted to his son the key of the box in which were the securities; but what business was that of defendants. The securities did not pass by delivery; possession gave no title; so far as perpetrating a fraud was concerned, the manual possession of the son could cause inconvenience but no loss to anybody; the criminal was powerless without the signatures of his father and grandmother to the authority for transfer. The defendant was not the owner of the securities, and had no such interest in them as would warrant it in exacting from the executor vigilance. We are not now speaking of the liability of the father to his cestuis que trustent, the equitable owner; that arises wholly out of a fiduciary relation, and is tested by other rules. He occupied no such relation to this defendant; he was not trustee for it of this stock; he owed to it no other duty than he owed to the general public. We have never understood that the widest application of the principle of Young v. Grote warranted the general public in demanding that the owner of a chattel shall, by his vigilance, protect it from criminals, or, if he neglect to do so, suffer the loss; that is, if the owner of a stolen horse found him in possession of another, the one in possession could maintain his claim by answering, "I bought the horse, not knowing he was stolen, from your servant to whom you entrusted the key of your stable; your negligence in trusting a dishonest servant caused the loss, and therefore I will keep your property." Yet this is the logical conclusion if Young v. Grote is applicable to these facts. While not intending to relax any of

the rules which hold trustees to a strict accountability to the beneficiaries of the trust funds, we will not enlarge that liability so as to protect those who deal in the trust funds from the consequences of their own neglect.

We are clear the executor failed in no duty owing by him to this defendant, and it is by no means clear he was even negligent towards those for whom he was trustee.  In the city of Philadelphia today is there a single estate of the magnitude of this one, approaching a million of dollars, where the legal trustee or custodian of it does not necessarily in performing his duties act through agents, clerks or secretaries who must frequently have access to the securities, and opportunities for embezzlement?  Without such aids could any trustee of such large interests efficiently perform his duty?  Every corporation assuming the duties of executor, trustee, or guardian of estates, acts only through agents, from president to messenger-boy, and it is within the physical power of each, at times, to appropriate the trust securities.  The legal trustee is an artificial person who can act only through agents.  Courts and testators, when exercising the power of appointment, endeavor to select a solvent corporation conducted by reputable agents, but no further care can be exercised.  Any one of these agents may act dishonestly; and until we are endowed with prevision no possible care can guard against all unfaithfulness.  The father had confidence in his son's integrity and business ability, and entrusted to him largely the active management of this estate, but did not relinquish his own judgment or supervision; the son grossly betrayed the confidence reposed in him; this was discovered only when an examination of the security box demonstrated it was empty.  There was no evidence that before this he had any reason to believe his son was not capable and worthy of trust. Up until the crash came the son's integrity was not questioned by any one; brokers, bankers, and this defendant accepted the forged papers which they, from the very nature of the transactions, must have known effected an appropriation of the securities of the estate of Charles H. Baker for the benefit of John R. Baker, Jr., without a suspicion that the transfers were unauthorized by his father, the trustee, and without even inquiry as to the genuineness of the fraudulent powers.  When all the business world with whom he was brought so closely in contact

in his many dealings, a world whose perceptions were not dulled by affection, but sharpened by interest, thought he was honest, there is no reason for assuming the father should have deemed him otherwise. To our minds no fault or neglect on the part of John R. Baker, the father, is shown, and if there was such fault in trusting the son with the key to the box, that fault did not occasion the loss. The defendant suffers from the crime of a forger, made possible because the son could write his father's name, not because the father intrusted him with a key; and because it, without inquiry, accepted forged signatures as genuine.

The third assignment, that the evidence does not show the signatures were written without the authority of John R. Baker, is in direct conflict with the finding of the master. A certain power of attorney for the transfer of city loans, to which was affixed what purported to be the signature of the father as executor, incorrectly described the loan in the body of the instrument; the transfer clerk of the bank called upon the father to have the description corrected, which was done, and the authority reaffirmed by the father after the correction. This was without examination of the signature to ascertain whether it was genuine, for its genuineness was assumed by both the bank officer and the executor. That the father, in view of the large number of papers he had signed authorizing transfers and changes of investments, might, without examination, fail to recollect that he had not signed this particular one, and assume the simulated signature to be genuine is altogether probable; and in view of all the testimony relating to the transaction, the master so finds and says: "There is no evidence in the case to show that John R. Baker ever authorized his son to sign his name to transfers of stock or bonds belonging to any estate for which he was trustee." It is only necessary to say that a perusal of the whole evidence amply warranted this conclusion. But, even if the father had authorized the son in some instances to write his name to a power authorizing a sale or transfer of some other security having no connection with these fifty shares of stock, that fact would not warrant the inference that such authority had been given in this case.

The case of Telegraph Co. v. Davenport, 97 U. S. 369, has been cited by appellees as a case closely resembling this one in

its facts, ruling that even where the securities of a trust estate have been unlawfully transferred by a dishonest agent of a negligent trustee, such negligence does not estop the cestuis que trustent from successfully asserting in equity their right to the property. In view of what we have said it is not necessary to discuss or decide this point, although the opinion of Justice FIELD in the case cited, and our own authorities, Bohlen's Estate, 75 Pa. 305; Guillou v. Peterson, 89 Pa. 163, would seem to sustain this view.

The decree of the court below is affirmed.

In thus affirming the decree, primary and alternative, we express no opinion as to whether, in an equity proceeding, it is all plaintiff might claim. It is sufficient to say appellee has taken no exception to it.