# Hammond, Appellant, v. Aluminum Company of America.

*Statutes—Construction—General act—Inconsistency with earlier act—Implied repeal.*

1. When a statute establishing a general system for government is silent as to the repeal of former statutes relating to the same subject, an intention to repeal the earlier statutes arises by implication.

*Corporations—Stockholders—Refusal of right to inspect books—Action for penalty—Acts of April 7, 1849, Section 24, P. L. 563; April 17, 1869, P. L. 71; April 29, 1874, P. L. 73—Demurrer—Judgment for defendant.*

2. A necessary result of Section 46 of the General Corporation Act of April 29, 1874, P. L. 73, which repealed the Act of April 7, 1849, P. L. 563, and the supplements thereto, "so far as they provide for the creation of corporations for any of the purposes provided" by the Act of 1874; was to confine the Act of 1849, in its operation to companies already formed thereunder and engaged in some branch of manufacture for which no provision was made in the general corporation act of 1874.

3. As the Acts of 1849 and 1874 both make provision for the inspection of books and records of corporations by the stockholders thereof, it is evident that both were not intended to operate in the case of corporations chartered under the Act of 1874, and the provisions of the Act of 1849, since the passage of the Act of 1874, can apply only to corporations chartered under the Act of 1849.

4. In an action of assumpsit brought by a stockholder of a corporation organized under the Act of 1874, to recover the penalty provided by the Act of 1849 for the refusal of a corporation to allow a stockholder to inspect its books; *held,* that the penalty provided by the Act of 1849 could be recovered only against corporations organized thereunder; and a judgment for defendant on demurrer to plaintiff's statement of claim was affirmed.

Argued March 18, 1918.    Appeal, No. 52, Oct. T., 1918, by plaintiff, from judgment of C. P. Allegheny Co., Jan. T., 1918, No. 1310, on demurrer to plaintiff's statement of claim contained in affidavit of defense, in case of Benjamin D. Hammond v. Aluminum Company of America.    Before BROWN, C. J., POTTER, STEWART, FRAZER and WALLING, JJ.    Affirmed.

Assumpsit for penalty prescribed by Section 24 of the Act of April 7, 1849, P. L. 563.

Motion for judgment on demurrer to plaintiff's statement of claim contained in affidavit of defense.    Before SHAFER, P. J.

The opinion of the Supreme Court states the facts.

The court entered judgment for the defendant on the demurrer.    Plaintiff appealed.

*Error assigned* was the judgment of the court.

*Sidney J. Watts,* for appellant.

*Gordon & Smith,* with them *George B. Gordon,* for appellee.

OPINION BY MR. JUSTICE STEWART, May 9, 1918:

The appeal is from a judgment entered sustaining a demurrer which appears in the affidavit of defense filed to an action brought to recover from the Aluminum Company of America, a corporation chartered under the general corporation Act of 29th April, 1874, P. L. 73, the penalty prescribed by the 24th section of the Act of 7th April, 1849, P. L. 563, which act, after prescribing that it shall be the duty of the directors of every such company, incorporated under the provisions of said act, to cause a book to be kept by the treasurer or secretary thereof at the office or principal place of business of the company, which shall contain among other things the names of all persons, alphabetically arranged, who are or who shall within one year have been stockholders of such company, showing their places of residence, the number of shares of the stock held by them respectively, and the time when they respectively became the owners thereof, and the amount paid on such shares, and the total amount of the capital stock paid in; which book shall at the end of the year be carefully preserved in the office of the company for future reference, and shall during the usual business hours of the day, on every business day, be opened for the inspection of all persons who may desire to inspect the same, and any and every person shall have the right to make extracts from such book, further provides that, "if any such company shall neglect or refuse to keep such book; or to make or cause to be made any proper entry therein, or shall, on application made to any director or officer thereof, neglect or refuse to exhibit the same, or to allow extracts to be

taken therefrom as hereinbefore required, such company shall forfeit.and pay to the party aggrieved, fifty dollars for each and every day it shall so neglect or refuse as aforesaid, recoverable by said party as in other cases of claims against such company." By Act of 17th April, 1869, P. L. 71, it was enacted that the provisions of the 24th section (above quoted) of the Act of 7th April, 1849, "shall be and are hereby extended to all manufacturing or mining companies now or hereafter incorporated under any special or general law of this Commonwealth."

The plaintiff in his statement of claim avers that he is the owner of one share of capital stock in the defendant company; that on or about September, 1917, he demanded of the defendant company the right to inspect the book required by the statutes to which reference has been made, to be kept and maintained for inspection, and demanded further that he be allowed to make extracts therefrom; that the defendant company refused plaintiff's demand and in such refusal persisted for 41 days from October 3, 1916, and that because of such refusal defendant became indebted to plaintiff in the sum of $2,050, for the recovery of which sum suit was brought. The affidavit of defense averred that the facts set forth in the statement were insufficient in law to constitute a good cause of action inasmuch as the acts of assembly upon which the cause of action was based had been repealed, and judgment was prayed for on the whole record. The learned trial judge sustained the demurrer, holding in an opinion to which little need be added, that the Act of 7th April, 1849, P. L. 563, and 17th April, 1869, P. L. 71, supra, had no application to a manufacturing company chartered under the General Corporation Act of 29th April, 1874, P. L. 73. This latter act in its 38th section provides for the incorporation of companies formed for the manufacture of iron or steel or both, or of any other metals or of any articles of commerce from wood or metal or both, and in its several sections prescribes

rules, regulations and requirements for the control and management of such corporations. By the 46th section in express terms it repeals the Act of 7th April, 1849, along with several other acts specifically mentioned, and the several supplements to each of said acts "so far as they provide for the creation of corporations for any of the purposes provided for by this act, or are inconsistent with this act." One necessary result of this legislation was to confine the earlier act of 1849 thereafter in its operation to companies already formed thereunder and engaged in some branch of manufacture for which no provision was made in the General Corporation Act of 1874, if any such there can be. So comprehensive and embracing in its provisions is the Act of 1874, both with respect to kind and character of companies that may be formed and incorporated thereunder, having regard to their objects and purposes, and the rules and regulations appropriate and prescribed for their government, management and control, that it seems quite manifest that the purpose of the act was to provide a complete system for the creation and regulation of corporations, substituting such system for the practice which had theretofore prevailed of obtaining a special charter in each particular case under such regulations as the legislature might see fit to impose, and with such privileges as the legislature might see fit to grant. Under such method uniformity of legislation with respect to requirements in the conduct and management of corporations was entirely impracticable, and the result was discrimination in rights and powers which gave to some advantages which were denied to others. The time chosen was opportune for a change. Our present constitution went into effect in January, 1874, and it took away from the legislature the power to pass any local or special law creating corporations or amending renewing or extending the charters thereof, so that thereafter corporations could be chartered only under a general law to be thereafter enacted. This was the exigency the legislature of 1874 was called upon to

meet, and it could meet it only as it provided a system under which companies organized for a prescribed and legitimate purpose might be incorporated, defining rules and regulations by which they were to be governed and controlled, depending upon the nature and character of the business in which they were to engage. Admittedly this defendant corporation at the time of its organization could not have been incorporated under the Act of 1849, its proposed object being within the provisions of the Act of 1874 the power to incorporate under the Act of 1849 was taken away by the repealing clause contained in the 46th section of the Act of 1874. This repealing clause extended further and embraced all provisions in the Act of 1849 and its supplement which are inconsistent with the Act of 1874, that is to say, inconsistent with the provisions of that act which are intended to regulate corporations chartered thereunder. The Act of 1849 contains many provisions for the regulation of corporations chartered under its term, therefore an unqualified repeal of the Act of 1849, while it would not have affected the continued existence of the corporations previously chartered thereunder, would have left such corporations without guide or compass in the conduct of the business of each. Therefore it was that the express repeal in the Act of 1874 was limited to such parts of the Act of 1849 as were inconsistent with the provisions of the later act. Clause 8, section 39, page 102 of the Act of 1874 reads as follows: "Every such corporation shall, annually, in September, make, and the president, treasurer, and a majority of the directors, shall sign, swear to and deposit with the recorder of deeds for said county, a certificate stating the amount of capital stock paid in, the names and number of shares held by each stockholder, the amount invested in real estate and in personal estate, the amount of property owned and debts due to the corporation, on the first day of August next preceding the date of such certificates, and the amount, as nearly as can be ascertained, of existing

demands against the corporation at the date of the certificate." It may be admitted that there is no such inconsistency between the provisions of the 24th section of the Act of 1849 and the clause of the Act of 1874 above recited as indicates repugnancy or positive opposition, but it is we think too evident to admit of discussion that both were not intended to operate in the case of corporations chartered under the latter act; that the purpose of the legislation of 1874 was to provide a different protection for the public and the creditors of corporations—and such must have been the only purpose of the legislation—than that provided by the 24th section of the Act of 1849; allowing each act to operate without conflict in a sphere of its own, limited as that sphere might be in the case of companies chartered under the earlier act. To the extent we have indicated there is here a manifest inconsistency—we do not say, nor do we mean, an open conflict between the terms used in the several acts, but an inconsistency that would become apparent and confusing had the legislature in addition to the 39th section, clause 8 of the Act of 1874 incorporated in that act the 24th section of the Act of 1849. The whole purpose of the provision in the earlier act, so far as it could serve any public end—and it could have had no other—seems to be fully met by the later provision requiring every corporation to deposit in September of each year with the recorder of deeds of the county where the corporation had its seat a sworn certificate stating the amount of capital stock paid in, the names and number of shares held by each stockholder, etc. It is not to be supposed that it was a legislative intent to introduce into the system it was about to establish a requirement under an older statute which had been so far supplied within its own terms as to leave it without end or purpose. It is to be kept in mind that the Act of 1874 was not a revision or codification of existing laws governing corporations, but was an original enactment embracing in its terms all organizations thereafter to be incorpo-

rated, defining their powers and limitations and prescribing rules and regulations for their conduct and management by which they were to be governed. This was a clear substitution for the rules and governing regulations prescribed by earlier acts. The rule here applicable is thus stated in Endlich on Interpretation of Statutes, section 201, "In such cases, the later act, although it contains no words to that effect, must, in the principles of law, as well as in reason and common sense, operate to repeal the former—the negative being implied from the 'reasonable inference that the legislature cannot be supposed to have intended that there should be two distinct enactments embracing the same subject-matter in force at the same time.' If this could be the case, it is obvious that the later statute could become the law only so far as parties might choose to follow it; whereas, the mere fact that a statute is made shows, that, so far as it goes, and so far as it introduces a new rule of general application, it was intended as a substitute for, and to displace, an earlier one of equally general application." Among the authorities cited in support of this rule are: Bartlet v. King, 12 Mass. 537; Johnston's Estate, 33 Pa. 511. To these may be added: Rhoads v. The Hoernerstown Building & Savings Assn., 82 Pa. 180. As will be observed these authorities are to the effect that when the later statutes establishing a general system for government is silent as to the repeal of former statutes relating to the same subject, an intention to repeal the earlier statutes arises by implication. This of itself would be conclusive in the present case and fully justifies the action of the court below therein. Aside however from this feature of the case, there is that expressed in the repealing clause contained in section 46 of the Act of 1874, which, in the opinion of the writer, might with much reason have application here, and we would be fully warranted in holding that there is such inconsistency between the provisions we have discussed in the two acts as to bring the Act of 1849 within the ex-

press repeal contained in the later. It is upon the former ground however that the court rests its conclusion. namely, an implied repeal.

.The judgment is affirmed.