## FIRST NAT. BANK OF BIDDEFORD v. PITTSBURGH, F. W. & C. RY. CO.

### No. 9647.

District Court, E. D. Pennsylvania.
July 18, 1939.

382

Edward C. Clark, of Boston, Mass., and Francis F. Burch, of Philadelphia, Pa., for plaintiff.

Barnes, Myers & Price, of Philadelphia, Pa., for defendant.

KALODNER, District Judge.

This is a suit in equity brought by the plaintiff, substituted trustee, against the defendant corporation, praying for a restoration of stock which is alleged to have been transferred by the prior trustee in violation of his trust.

From the evidence, and the stipulation filed by counsel, I make the following special findings of facts:

1. Plaintiff, the First National Bank of Biddeford, trustee under the will of Susan L. Thompson, deceased, is a corporation organized and chartered under the laws of the United States with its place of business at 208 Main Street, Biddeford, County of York and State of Maine.

2. The defendant is a corporation duly formed and organized under the laws of the States of Pennsylvania, Indiana and Illinois, with a place of business in the Broad Street Station Building, 1617 Pennsylvania Boulevard, Philadelphia, County of Philadelphia, and Commonwealth of Pennsylvania.

3. The amount involved in this controversy, exclusive of interest and costs, exceeds the sum of $3,000.

4. Susan L. Thompson, late of Kennebunk, Maine, died on February 2, 1930 leaving a will dated February 15, 1919, which said will provides, inter alia, as follows:

"Sixth: I give my twenty (20) shares of Guaranteed Stock of the Pittsburgh, Fort Wayne and Chicago Railroad and my four (4) shares of Common Stock of the Boston & Maine Railroad unto Perley Gardner, Esquire, of Exeter, New Hampshire, *in trust*, nevertheless for a period of ten years from my decease, the net income therefrom to be paid over to said Harry T. Burbank, and at the termination of said period I give the same unto said Harry T. Burbank absolutely in fee.

"If, however, said Harry die before me or before the lapse of said period of ten years, then said trust shall terminate and I give the same to his issue in fee, if there be any, and otherwise to my niece Olive T. Lunt and James L. Thompson or the survivor of them."

5. Harry T. Burbank, the nephew of said testatrix, mentioned in the said paragraph of her will, is now living and confined in the State Hospital for the Insane at Concord, New Hampshire.

6. Perley Gardner, the trustee mentioned in said paragraph of said will, declined to act as such trustee, whereupon the Probate Court for the County of York, Maine, on November 19, 1930, appointed Edwin C. Burbank, of Malden, County of Middlesex, Massachusetts, trustee under

said will for the benefit of Harry T. Burbank and others.

7. A certificate of stock, Number A 7677, for twenty shares of the preferred capital stock of defendant company, dated January 23, 1931, was issued and delivered to the said "Edwin C. Burbank, Trustee under the will of Susan L. Thompson."

8. The said Edwin C. Burbank, trustee aforesaid, filed a petition of resignation as trustee under the will of Susan L. Thompson with the said Probate Court for the County of York, Maine, which resignation was dated April 12, 1934, and the said resignation was accepted by decree of the Probate Court of Maine on December 31, 1934.

9. The plaintiff, the First National Bank of Biddeford, was appointed trustee under the will of Susan L. Thompson of the estate given in trust for the benefit of Harry T. Burbank, formerly of Exeter in the County of Rockingham and State of New Hampshire, by the said Probate Court for the County of York, Maine, by decree dated December 31, 1934.

10. Defendant's said stock certificate Number A 7677 sometime prior to October 24, 1934, was presented to defendant's transfer office in New York City to be transferred to the name of F. T. Sutton & Co., to permit the cestui que trust, Harry T. Burbank, to transfer the said twenty shares of stock in order to invest the proceeds in a business enterprise in which he was interested and such transfer was refused by defendant's transfer agent, whereupon the defendant cancelled said certificate Number A 7677 under date of October 24, 1934, and issued a new certificate, Number A 9803, for twenty shares of defendant's preferred stock, to "Edwin C. Burbank, Trustee under the will of Susan L. Thompson," under date of October 24, 1934.

11. Thereafter on December 18, 1934 said certificate Number A 9803, endorsed by Edwin C. Burbank, trustee under the will of Susan L. Thompson, with a power of attorney to transfer said shares to Weston & Co., brokers, was forwarded by a Boston broker to the defendant together with a certified copy of the will of Susan L. Thompson and a certified copy of the appointment of Edwin C. Burbank as trustee under said will.

12. Said certificate Number A 9803 was cancelled by the defendant on December 19, 1934 and on said date defendant issued in exchange therefor a new certificate for twenty shares of its preferred capital stock to Weston & Co.

13. The defendant refused written demands to reinstate the plaintiff on the books of the defendant corporation as a stockholder for twenty shares of preferred stock and for the payment of dividends payable between the date of the transfer to Weston & Co., and the date of such demands.

14. The defendant has failed to reinstate the plaintiff as a stockholder of said twenty shares of preferred stock.

15. The defendant has failed to pay to the plaintiff sixteen quarterly dividends of $35 each which are due and payable from the Tuesday after the first Monday of April to the Tuesday after the first Monday in January, 1939, inclusive, or a total of $560.

### Discussion

Where a corporation permits an erroneous or wrongful transfer of stock, it may be compelled to replace it. The aggrieved person may resort either to a legal or equitable remedy. He may take the wrongful transfer as a conversion and maintain an action at law against the corporation for damages or, if he so elects, compel the corporation to recognize him as a stockholder and issue to him a certificate for the shares wrongfully transferred. 14 Corpus Juris 776; Pennsylvania Company, etc., v. Franklin Fire Insurance Co., 181 Pa. 40, 37 A. 191, 37 L.R.A. 780; Egan, Adm'r v. United Gas Improvement Co., 319 Pa. 17, 178 A. 683; Thompson on Corporations, sections 4428 and 4435. In addition to having this stock restored, he is entitled to the dividends of which he was deprived with interest thereon; 14 Corpus Juris 777.

In the case at issue, the plaintiff substituted trustee, has chosen the remedy in equity for the restoration of the stock and payment of the dividends. The defendant corporation conceded the propriety of plaintiff's procedure, but contends, first, that the plaintiff has proved no loss, and second, that it, the defendant, was not put on notice that the prior trustee was violating the obligations of his trust in assigning the stock.

The defendant further maintains that the plaintiff has failed to prove whether the prior trustee received the proceeds of the transfer of stock, and if so, what

disposition was made of the same, or the extent of the loss to the beneficiary.

The answer to this contention is that the nature of the relief sought is not damages, but specific restoration. The plaintiff makes out his case in equity if he pleads and proves the violation of the trust and the wrongful transfer by the corporation. He is entitled to the equitable relief he seeks even without demanding alternative relief in damages.

▪ Of course, it is true that "He who seeks equity must do equity," but it is not incumbent upon the plaintiff as part of his case to prove that he has not failed to do equity. The case of Chicago Edison Co. v. Fay, 164 Ill. 323, 45 N.E. 534, 537, is illustrative. There the fiduciary actually deposited the proceeds in the trust estate, and the beneficiary enjoyed the benefits thereof. It was held that the beneficiary was entitled to the restoration of the stock in absence of proof that the beneficiary acted with knowledge in taking and retaining the proceeds. In that case, the defendant corporation also sought to interplead the transferee, but the court said: "Its [the corporation's] duty was to repair the injury it had done, and then seek redress from those, if any, liable to it."

As to the defendant's second contention, it is well to keep the following facts clearly in mind:

Susan L. Thompson died on February 2, 1930. Under her will she bequeathed twenty shares of the preferred stock of the defendant corporation to a trustee in trust to pay the income to one Harry T. Burbank for the period of ten years from the date of her death and at the expiration of the ten years the stock was to become his absolutely.

Harry T. Burbank is now living. The trustee named in the will renounced, and Edwin C. Burbank was substituted as trustee. A certificate for twenty shares of defendant's stock was issued in the name of "Edwin C. Burbank, trustee under the will of Susan L. Thompson." The trustee endorsed this certificate in blank some time prior to October 16, 1934. On the latter date, the certificate was presented to the transfer office of the defendant to be transferred and a new certificate issued to F. T. Sutton & Co., brokers. The assignment was to permit the cestui que trust, Harry T. Burbank, to invest the proceeds from the sale of the stock in a private business in which he was interested.

At that time, in October, 1934, the defendant requested a certified copy of the will. The request was complied with. The defendant then refused to honor the assignment and to issue a certificate to F. T. Sutton & Co. The assigned certificate being mutilated, a new certificate was issued to "Edwin C. Burbank, trustee under the will of Susan L. Thompson," the same holder as described in the mutilated certificate.

The new certificate was dated October 24, 1934. Subsequently, on December 18, 1934, Edwin C. Burbank (the prior trustee) having again assigned the stock to a bona fide purchaser, the stock certificate was presented to the defendant for transfer, together with a certified copy of the will of Susan L. Thompson and a certificate of the appointment of Edwin C. Burbank as trustee under the will. On this occasion the defendant carried out the assignment and issued a new certificate in accordance with its terms to Weston & Co., the purchaser. It was this transfer which led to the instant proceeding.

▪ Ordinarily, when a trustee is described as such on the face of a stock certificate, a corporation which permits a transfer of such stock does so at its own peril if the trustee has no right to transfer the stock. Bayard v. Farmers' & Mechanics' Bank of Philadelphia, 1866, 52 Pa. 232, 237.

Subsequent to this decision, the Pennsylvania Legislature passed two acts dealing with stock transfers.

The first of these acts was the Act of May 23, 1874, P.L. 222, Section 1, Title 20, Purdon's Pennsylvania Statutes, Section 3151, which reads as follows:

"§ 3151. Public loans freely transferable

"All certificates of stocks and loans which have been or may hereafter be issued by this commonwealth, or by any municipal or other corporation, shall be transferable by the legal owner thereof, without any liability on the part of the transfer agents of the commonwealth, or the municipal or other corporation permitting such transfers, to recognize or see to the execution of any trust, whether expressed, implied or constructive, to which such stocks or loans may be subject, unless when such transfer agents of the commonwealth, or officers of such municipal or other corporation, charged with the duty of permitting such transfer to be made,

shall have previously received *actual notice in writing,* signed by or on behalf of the person or persons for whom such stocks or loans appear by the certificate thereof to be held in trust, that the proposed transfer would be a violation of such trust. (1874, May 23, P.L. 222, § 1.)" (Italics supplied).

The second of the acts was the Uniform Fiduciaries Act of May 31, 1923, P.L. 468, Title 20, Purdon's Pennsylvania Statutes, Section 3311 etc. Section 3 of the Act reads as follows:

"§ 3351. Registration of transfer of securities held by fiduciaries

"If a fiduciary, in whose name are registered any shares of stock, bonds, or other securities of any corporation, public or private, or company or other association, or of any trust, transfers the same, such corporation or company or other association, or any of the managers of the trust, or its or their transfer agent, is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in making the transfer or to see to the performance of the fiduciary obligation, and is liable for registering such transfer only where registration of the transfer is made *with actual knowledge* that the fiduciary is committing a breach of his obligation as fiduciary in making the transfer *or with knowledge of such facts* that the action in registering the transfer amounts to bad faith. (1923, May 31, P.L. 468, § 3.)." (Italics supplied).

The Act of 1874 was undoubtedly intended to modify the effect of the decision of Bayard v. Farmers' & Mechanics' Bank of Philadelphia, supra; Stockton et al. v. Lehigh Coal & Navigation Co., 9 Wkly. Notes Cas. 110; Miller v. Westmoreland Coal Co., 22 Pa.Dist.R. 904.

Although the plaintiff contends that the Act of 1874 was intended to apply only to governmental corporations, neither the title nor the content of this Act would so indicate. The words "or other corporation" (lines 2 and 3 of Section 1, Act of 1874, 20 P.S.Pa. § 3151) are to the contrary.

Section 3 of the Uniform Fiduciaries Act of 1923 deals with the same subject matter as the Act of 1874, and the Uniform Fiduciaries Act embraces the whole field of the rights and liabilities of persons dealing with fiduciaries.

Sections 13 and 15 of the Act clearly evidence the legislative intent in this regard.

Section 13 of the Act provides "Uniformity of Interpretation.—This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those States which enact it."

Section 15 of the Act provides "Inconsistent Laws Repealed.—All acts or parts of acts inconsistent with this act are hereby repealed."

The Uniform Fiduciaries Act superseded the Act of 1874: "Where a later act covers the whole subject of earlier acts, embraces new provisions, and plainly shows that it was intended, not only as a substitute for the earlier acts, but to cover the whole subject then considered by the Legislature, and to prescribe the only rules in respect thereto, it operates as a repealer of all former statutes relating to such subject matter. The rule applies not only where the former acts are inconsistent or in conflict with the new act, but also where the former acts are not necessarily repugnant in express terms or in all respects, to the new acts." 59 Corpus Juris 919.

The Supreme Court of Pennsylvania subscribed to this rule in Hammond v. Aluminum Company of America, 261 Pa. 370, 377, 104 A. 660, 662: "The rule here applicable is thus stated in Endlich on Interpretation of Statutes, § 201: 'In such cases, the later act, although it contains no words to that effect, must, in the principles of law, as well as in reason and common sense, operate to repeal the former—the negative being implied from the "reasonable inference that the Legislature cannot be supposed to have intended that there should be two distinct enactments embracing the same subject-matter in force at the same time." ' "

The principle laid down in Hammond v. Aluminum Company of America, supra, has been affirmed in Bosack v. Schuylkill County, 311 Pa. 157, 165 A. 393; Commonwealth ex rel. v. Matthews, 303 Pa. 163, 171, 154 A. 359; Jefferson County v. Rose Township, 283 Pa. 126, 129 A. 78; and, Baker et al. v. Kirschnek, 317 Pa. 225, 176 A. 489.

" 'Where the clear general intent of the Legislature is to establish a uniform and mandatory system as in the municipal

classification acts, the presumption must be that the local acts are intended to be repealed'. Commonwealth ex rel. v. Brown, 210 Pa. 29, 59 A. 479, 482; Commonwealth v. Moore [255 Pa. 402, 100 A. 260], supra. * * *

" 'A subsequent statute, revising the whole subject-matter of the former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, in [accordance with] the principles of law, as well as in reason and common sense, operate to repeal the former.' Rhoads v. Hoernerstown Bldg. & Sav. Ass'n, 82 Pa. 180, cited with approval in Fort Pitt Bldg. & Loan Ass'n v. Model Plan Bldg. & Loan Ass'n, 159 Pa. 308, 28 A. 215. * * *" Bosack v. Schuylkill County, supra [311 Pa. 157, 165 A. 394].

The manifest legislative intent that the Uniform Fiduciaries Act shall be of universal application, notwithstanding the earlier act or acts, apparent in Sections 13 and 15, under the Pennsylvania decisions, operate to make effective and controlling in this situation Section 3 of the Act of 1923.

"The act of 1929 establishes a mandatory system; furthermore, the expression 'all acts or parts of acts inconsistent herewith are hereby repealed,' as contained in the present statute or in any general enactment, shows a legislative intent to repeal a local law to the extent of the inconsistency. Commonwealth v. Moore, 255 Pa. 402, 408, 100 A. 260." Commonwealth ex rel. v. Matthews, supra [303 Pa. 163, 154 A. 362].

■ The Uniform Fiduciaries Act protects the corporation in issuing new stock unless it has "actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making the transfer or with knowledge of such facts that the action in registering the transfer amounts to bad faith." In the instant case the defendant corporation received a copy of the will (which disclosed the ten-year trust provision) when the first unsuccessful attempt was made to transfer the stock in October, 1934. At that time it also received the tax papers which undoubtedly disclosed the date of death (page 7, notes of testimony). It again received a copy of the will and a certificate of the appointment of Edwin C. Burbank as trustee under the will when the transfer was requested (and made) on December 18, 1934. The certificate of appointment was dated November 19, 1930, and disclosed that the will was probated on March 12, 1930. Nevertheless the defendant maintains that it had no notice of the date of the testatrix's death and therefore had no knowledge that the trustee was violating his trust.

■ Such a contention is utterly specious and without merit. The fact that the will was probated in March, 1930, and that the trustee, Edwin C. Burbank, was appointed in November, 1930, is dispositive of the defendant's contention. Wills are normally probated within a few months after the decease of the testator or testatrix. It is a general rule that whatever puts a party on inquiry amounts in judgment of law to notice, provided that the inquiry becomes a duty and would lead to a knowledge of the facts by the exercise of ordinary intelligence and understanding. Hottenstein v. Lerch, 104 Pa. 454; 46 Corpus Juris 543. Clearly in this case a warning flag had been waved before the defendant and it had a duty to protect its stockholders by making further inquiry.

Conclusions of Law

1. Edwin C. Burbank, trustee under paragraph 6 of the will of Susan L. Thompson, had no authority to transfer twenty shares of stock in the defendant company to any person other than to his successor trustee, the plaintiff herein, at any time prior to February 2, 1940 (ten years from the death of the testatrix).

2. The defendant was put on notice that Edwin C. Burbank, trustee under the will of Susan L. Thompson, had no authority to make the transfer prior to the expiration of ten years from the date of the decease of the testatrix, Susan L. Thompson, which occurred on February 2, 1930.

3. The defendant wrongfully and improperly transferred the twenty shares of stock represented by certificate Number A 9803 to Weston & Co. (in December, 1934).

4. The plaintiff is entitled to the relief prayed for.

Counsel is directed to prepare a decree.