## Tremont Township School District v. Western Anthracite Coal Company

*Charles L. Frank*, for plaintiff.

*Ralph M. Bashore* and *Roy P. Hicks*, for defendant.

DALTON, J., July 24, 1950.—On June 20, 1949, pursuant to Pa. R. C. P. 1034, the court granted plaintiff's motion for judgment on the pleadings and entered judgment against defendant. On June 28, 1949, plaintiff caused an attachment execution to issue. On July 6, 1949, the attorneys for defendant filed a petition to set the execution aside, and a rule to show cause issued, to which plaintiff filed an answer.

On the argument of the rule the sole reason pressed for setting the execution aside was that the execution was invalid because it was issued less than three weeks after the entry of the judgment. This contention is based on that portion of the Act of March 11, 1809, P. L. 36, 5 Sm. L. 15, sec. 6, 12 PS §1162, which reads as follows:

". . . and that every party may have sufficient opportunity to take out a writ of error, no execution shall issue upon any judgment, on any special verdict, demurrer or case stated, unless by leave of the court, in special cases for security of the demand, within three weeks from the day on which such judgment shall be pronounced."

The judgment entered in the instant case is not a judgment on a special verdict or case stated. Whether it is a judgment on demurrer, within the intendment of the Act of 1809, we are not required to consider, because defendant makes no such contention. The presence of a comma, after the word "judgment" in the portion of the act quoted, leads the parties to differ as to the proper construction of the act. Petitioners' interpretation is that no execution shall issue upon *any* judgment *or* any special verdict, demurrer or case stated, unless by leave of court, within three weeks from the entry of judgment. Plaintiff, on the other hand, reads the statute as a prohibition, within the time limit stated, only of an execution upon a judgment entered on a special verdict, demurrer or case stated, and not as a prohibition of executions on judgments generally.

Plaintiff correctly observes that execution cannot issue on a mere special verdict, demurrer or case stated, but can issue only on a judgment entered thereon. We agree with plaintiff that the Act of 1809 extends only to executions on judgments entered on special verdicts, demurrers or cases stated. See Bryan v. Comly,

2 Miles 271, where the act was so construed. Apparently the only appellate decision in which the statutory provision here involved was considered is that of O'Hara v. U. B. Mut. Aid Society, 134 Pa. 417. In that case a contention that an execution on a judgment sur verdict, issued the same day judgment was entered, was in violation of section 6 of the Act of 1809, was brushed aside by saying (p. 423) : "The sixth specification is so clearly without merit that it requires no further notice." While the reason for this summary disposition does not appear in the opinion, the *decision* is direct authority adverse to petitioners' contention that execution may not issue upon *any* judgment within the three weeks' period without leave of court.

As an independent ground for supporting the validity of the execution plaintiff points to the Act of June 16, 1836, P. L. 755, sec. 1, 12 PS §2091, which provides that:

"Execution of *any* judgment may be had at *any* time within a year and a day from the first day of the term at which it was rendered: Provided, that if there be a stay of execution, the period aforesaid shall be computed from the expiration of such stay."

The Act of 1836 contains provisions for a stay of execution under certain circumstances, but it contains no provision for an absolute and unconditional stay of execution for three weeks, such as was provided for by the Act of 1809. After careful study and consideration, we are of opinion that the history, nature and internal content of the Act of 1836 exhibit a clear legislative intent to repeal and supersede the provisions of the Act of 1809 relating to executions, whether the earlier act be construed to extend only to executions upon judgments entered on special verdicts, demurrers or cases stated, or whether it be construed to extend to executions upon judgments generally.

The Act of 1836, entitled "An Act relating to executions," is not an isolated enactment whose effect upon prior legislation was not fully considered by the legislature; it is a comprehensive revision and codification of the law relating to executions. It is one of many acts drafted by the commissioners authorized by the resolution of March 23, 1830, P. L. 408, "to revise, collate and digest all such public acts and statutes of the civil code of this state, and all such British statutes in force in this state, as are general and permanent in their nature . . . to carefully collect and reduce into one act, the different acts and parts of acts which from similarity of subject ought to be so arranged and consolidated." Sections 3 to 8, inclusive, of the Act of 1836 are grouped under the heading: "Of the stay of execution." Sections 3, 4 and 5 are drawn from the Act of March 21, 1806, 4 Sm. L. 329, and relate to a stay of execution granted to freeholders, or to nonfreeholders who enter security. In the "Table of Contents", which is printed as a preface to the Act of June 16, 1836, in the Pamphlet Laws of 1835-1836, section 6 of the Act of 1836 is summarized as follows: "6. Execution not to issue within three weeks, in case of judgments upon special verdicts, demurrers, or cases stated." This would indicate that section 6 of the Act of 1836 was originally intended to reënact the provisions of the Act of 1809. The report of the commissioners appointed to revise the Civil Code, presented to the legislature on January 4, 1836, shows that that is so. In the original bill presented to the legislature, which is appended to that report, section 6 read as follows:

"No execution shall issue upon any judgment or any special verdict, demurrer or case stated, within three weeks from the day on which such judgment shall be pronounced, unless by leave of the court, in special cases for the security of the demand."

In the course of enactment, however, this language was radically changed, and as finally enacted by the legislature, section 6 of the Act of 1836 provided merely that "No execution shall issue upon any judgment on special cases, for the security of the demand." (In a note to 12 PS §1162, the word "demand" is misquoted as "defendant".) It may be, as the editors of Purdon's Penna. Statutes Annotated say, that section 6 of the Act of 1836, as finally enacted, has no meaning, but what is significant for present purposes is that the legislature clearly intended to deal with the subject matter of section 6 of the Act of 1809 and deliberately eliminated the prohibition by that act of executions within three weeks. Nor was the prohibition reënacted by any other portion of the Act of 1836. The avowed purpose of section 6 of the Act of 1809 was "that every party may have sufficient opportunity to take out a writ of error". This subject, the interrelation of executions and writs of error, was fully dealt with by sections 7 and 8 of the Act of 1836. After providing in section 7 for a recognizance with sureties in order that a writ of error might stay execution, it was provided in section 8, cl. 2, "That if a writ of error in any such case shall be issued, served, and bail entered as aforesaid, within three weeks from the day on which the judgment shall be entered, such writ of execution shall be stayed and superseded, upon the payment of costs, although the service or execution thereof shall have begun, and if such execution shall have been fully executed, the defendant therein may have from the court which issued the same, a writ of restitution of the proceeds thereof, as the case may require." The effect of section 8 of the Act of 1836, which was partly based upon the Act of March 11, 1834, P. L. 125, was to modify the common-law doctrine that a supersedeas, in order to stay proceedings on an execution, must come before there is a levy made under the execution (3 Am.

Jur., Appeal and Error, sec. 544; Bozarth v. Marshall, 1 Phila. 172; Neiier v. Scholken, 5 Kulp 133), by providing that a writ of error, if issued, served, and bail entered within three weeks from the day of judgment shall be a supersedeas, although an execution within that time may have been levied or even fully executed: Bryan v. Comly, 2 Miles 271. And while section 8 of the Act of 1836 has been since repealed by the Act of May 19, 1897, P. L. 67, the same legislative policy is continued by section 4 of the Act of 1897, 12 PS §1136, which contains the following similar language: ". . . nor shall an appeal supersede an execution issued or distribution ordered, unless taken and perfected, and bail entered in the manner herein prescribed within three weeks from such entry" of judgment.

It is clear that section 8 of the Act of 1836 recognized that an execution might validly issue within three weeks, because one of the conditions for obtaining a supersedeas was "the payment of costs". It is likewise clear that in revising the prior legislation on the subject of executions the legislature fully considered section 6 of the Act of 1809, and deliberately eliminated from section 6 of the Act of 1836 the three weeks' stay of execution granted by the earlier act. The omission must be assumed to have been intentional and deliberate (Fidelity Trust Company v. Kirk et al., 344 Pa. 455, 458) and " 'it is an elementary rule of statutory construction that a change of language indicates a change of legislative intent' ": Commonwealth v. Lowe Coal Co., 296 Pa. 359, 365. The purpose sought to be attained by the Act of 1809 was the protection of the judgment debtor's property rights pending a reasonable opportunity to obtain an appellate review, because, as has been seen, under the common-law doctrine then in force a writ of error would not supersede an execution unless it came before a levy was made under the execution. The common-law doctrine in this regard,

however, was modified by section 8 of the Act of 1836, and the purpose to be served by section 6 of the Act of 1809 was thereafter fully met by giving the supersedeas a retroactive effect, as provided by section 8 of the later act.

"It is not to be supposed that it was a legislative intent to introduce into the system it was about to establish a requirement under an older statute which had been so far supplied within its own terms as to leave it without end or purpose": Hammond v. Aluminum Company of America, 261 Pa. 370, 376.

Repeal by implication is a question of legislative intent. The most common situation in which repeal is implied is where the later statute is irreconcilable with the earlier one. But that is not the only case. The Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 91, 46 PS §591, recognizes three other situations in which repeal is implied. The one applicable to the present matter is stated thus: "Whenever a law purports to be a revision of all laws upon a particular subject, . . . such law shall be construed to repeal all former laws upon the same subject." This is a legislative declaration of the principles set forth in Murdoch v. Biery et al., 269 Pa. 577, 579-580, where it was said:

"It is stated in the opinion of this court by Mr. Justice Woodward, in Johnston's Est., 33 Pa. 511, 515, 'that a subsequent statute, revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on the principles of law, as well as in reason and common sense, operate to repeal the former'; see also Fort Pitt B. & L. Assn. v. Model Plan B. & L. Assn., 159 Pa. 308; Bennett v. Norton, 171 Pa. 221, 233. In delivering the opinion of the court in Emsworth Borough, 5 Pa. Superior Ct. 29, 31, President Judge Rice says, 'The question of the repeal of statutes by implication is one of legislative intention,

and all rules of construction have in view the ascertainment of that intention. One of the rules upon the subject is that a subsequent statute revising the whole subject-matter of the former statute and evidently intended as a substitute for it, although it contains no express words to that effect, operates to repeal the former.' . . . Ruling Case Law, Vol. 25, p. 925, states that, 'where a statute is revised, or a series of acts on the same subject is revised and consolidated into one, all parts and provisions of the former act or acts, that are omitted from the revised act, are repealed'; and the same principle is found in Sutherland on Statutory Construction (2d ed.) vol. 1, sections 270, 271."

See, to the same effect, Gordon, Secretary of Banking v. Winneberger, 310 Pa. 362, 370. See also Hammond v. Aluminum Company of America, 261 Pa. 370, where repeal was implied even though the court expressly conceded that there was no absolute repugnancy between the two statutes; Devine et al. v. John Lang Paper Co., Inc., 307 Pa. 566, 569-570; Werner et al. v. King et al., 310 Pa. 120, 124; Bosack v. Schuylkill County et al., 311 Pa. 157.

The purpose to be served by section 6 of the Act of 1809 was fully met and dealt with by section 8 of the Act of 1836, and the legislative intention to eliminate the three weeks' stay of execution granted by the earlier act from the revision and codification of 1836 is otherwise clear. We are therefore of opinion that insofar as section 6 of the Act of 1809 relates to executions, it has been repealed and superseded by the Act of 1836.

It may also be noted that the present judgment was entered in a case arising under section 21(b) of the Local Tax Collection Act of May 25, 1945, P. L. 1050, 72 PS §5511.21(b), which provides that "Upon each such judgment, execution may be issued without any stay. . . . "

There is another independent, basic and fundamental reason why the rule must be discharged, and that is because petitioners are without standing to ask the relief prayed for. The petition does not purport to be a petition by corporate defendant. On the contrary, it expressly states that it is the petition of defendant's *attorneys*. It is not signed or verified by any officer of corporate defendant; it is signed and verified by counsel. It is not averred that the proper officers of corporate defendant were unavailable or otherwise unable to sign or verify the petition. It is not averred that petitioners have authority to sign and verify the petition on behalf of corporate defendant. In 2 Standard Pa. Practice, at p. 470, it is said:

"Bearing in mind the fact that a motion and rule are a proceeding incidental to a pending action or suit to which the jurisdiction of the court has attached, it follows that the right to move for a rule is usually confined to parties of record, except when the petitioner has such an interest in the subject-matter of the suit as to give him a standing in the controversy. The petitioner for a rule must show that he is a party or privy to a pending proceeding." See also Borteck et al. v. Goldenburg et al., 87 Pa. Superior Ct. 602. Petitioners are not parties to this proceeding; neither do they have any interest in the subject-matter.

No substantial right of defendant has been prejudiced by the issuance of this execution. The judgment was entered on June 20, 1949. Had defendant taken and perfected an appeal and entered bail within three weeks thereafter, the execution would have been superseded by virtue of the Act of May 19, 1897, P. L. 67. Instead of taking an immediate appeal, defendant's attorneys filed, in addition to the present petition to quash the execution, a petition for reargument and a petition to open the judgment. In granting a rule to show cause in the case of each petition, the court also

stayed all proceedings. Subsequently, on January 30, 1950, the court refused reargument and also refused to open the judgment, whereupon defendant appealed. On May 22, 1950, the Supreme Court affirmed both the judgment and the order refusing to open it: Tremont Township School District v. Western Anthracite Coal Company, 364 Pa. 591. Pending the appeal, we refrained from making disposition of the rule to quash the attachment execution. It will thus be seen that defendant has obtained full advantage of appellate review, which the Act of 1809 was intended to protect, and as a practical matter has also obtained, not merely the three weeks' stay of execution now contended for, but a stay of more than 13 months.

And now, July 24, 1950, the rule to show cause why the attachment execution should not be set aside, stricken off and quashed is discharged, and garnishees are allowed 20 days from this date to file answers to the interrogatories.