**D'ESOPO v. HANOVER ORDER OF OWLS NEST 131, et al.**

No. 925.

District Court, M. D. Pennsylvania.
Aug. 23, 1934.

Kaufman & Mattes, of Scranton, Pa., for plaintiff.

Jas. G. Glessner, of York, Pa., for defendant.

JOHNSON, District Judge.

This case comes before the court on a bill in equity by the supreme president of the Order of Owls in behalf of himself and all the members of the Order of Owls against a subordinate Order of Owls at Hanover, Pa.

From the pleadings and the evidence, the court finds the following facts:

(1) That the Order of Owls is a voluntary unincorporated association operating on the lodge plan, founded November 20, 1904, under the laws of the state of Indiana, having as its object the advancement of its members, socially, morally, intellectually, and otherwise.

(2) That the Order of Owls adopted a constitution in 1904, which provides, among other things, that each subordinate nest or order shall pay to the Home Nest or Order for the support of the general organization the sum of 10 cents per member quarterly for each member of the branch who was in good standing at any time during such quarter.

(3) That the constitution of the Order of Owls makes no provision for ownership of property by subordinate nests, nor for dissolution of subordinate nests.

(4) That the Hanover Order of Owls, Nest No. 131, a local unincorporated association, was chartered as a subordinate nest by the Supreme Order of Owls in 1908.

(5) That on December 14, 1908, Hanover Nest No. 131, Order of Owls, was incorporated as a local beneficial society under sec-

tion 2, par. 9, of the Act of April 29, 1874, P. L. 73 (15 PS § 2, par. 9), "for the purpose of the maintaining of a society for beneficial and protective purposes to its members by affording relief in cases of sickness or accident, and by assisting in the burial of deceased members, the promotion and advancement of its members socially, morally, intellectually and otherwise, and the acquisition, furnishing and maintaining of a well regulated club house or other suitable quarters for the furtherance of said purposes from funds collected therein."

(6) That the said corporate charter also provides: "The funds of this corporation are to be raised by the payment of the regular dues and other assessments upon the members thereof, and from such other sources as the corporation may from time to time decide, and are to be expended for sick and funeral benefits and such other purposes as the corporation may decide by its by-laws for the maintenance of this corporation and the social enjoyment of its members and the Order of Owls."

(7) That on August 7, 1923, "Hanover Nest No. 131, Order of Owls, holding a legal and unreclaimed charter, issued by authority of the Supreme or Home Nest, Order of Owls," adopted by-laws and house rules, which, among other things, provided, in substance, for payment of sick and death benefits; for quarterly reports to the Home Nest, and transmitting thereto the per capita tax, as prescribed by the supreme laws; for the holding in trust by the trustees of all stocks and securities and other financial papers belonging to the nest.

(8) That the said by-laws of 1923 have not been amended.

(9) That no provision is made by said by-laws for dissolution of the nest or for the disposition of property in case of dissolution.

(10) That Hanover Nest No. 131, Order of Owls, was at all times, and is now, a subordinate nest of the National Order of Owls.

(11) That the Hanover Nest No. 131, Order of Owls, had a balance in its treasury as of September 26, 1932, in the amount of $6,398.17.

(12) That Hanover Nest No. 131, Order of Owls, in pursuance of its by-laws and the constitution of the Order of Owls, paid its per capita tax to the Home Nest to January 19, 1926, but made no payments thereafter.

(13) That the Hanover Nest No. 131, Order of Owls, has sufficient funds to pay the per capita tax that is due and owing to the Home Nest.

(14) That most of the funds of Hanover Nest No. 131, Order of Owls, were derived from the operation of a clubroom in the Nest Hall in accordance with the provisions of the corporate charter and by-laws.

(15) That the funds of the Hanover Nest No. 131, Order of Owls, were used to pay sick and death benefits.

(16) That the said clubroom ceased to operate on or about January, 1922, after which date no income was derived from the said clubroom.

(17) That, in addition to the above amount, a sum of $31.20 was derived from the sale of furniture held on May 31, 1932, which sum, certain members aver, belongs to the unincorporated Hanover Order of Owls, No. 131.

(18) That no testimony was taken to establish whether or not the unincorporated Hanover Order of Owls, No. 131, is still legally in existence, and therefore this court cannot find such fact.

(19) That, due to finding of fact No. 18, this court cannot make a finding as to the ownership of the fund referred to in finding of fact No. 17.

(20) That, if the unincorporated Hanover Order of Owls, Nest No. 131, is still in existence, it does not have more than $31.20 in its possession.

(21) That on or about September 16, 1926, in pursuance of a motion made and carried at a regular meeting of the incorporated Hanover Nest No. 131, Order of Owls, on August 17, 1926, a sum of $16,742.50 was distributed as a "dividend" among its members in good standing to August 1, 1926, approximately 246 in number.

(22) That each member in good standing received a "dividend" of 50 cents for each month of the entire term of his membership.

(23) That the dividend was paid, not on account of sick or death benefits, but was intended as a private distribution.

(24) That at a meeting of the incorporated Hanover Nest No. 131, Order of Owls, held on April 19, 1932, for the purpose of voting on the question of dissolution, 72 members voted to discontinue and 32 voted to continue, and the motion to discontinue was carried.

(25) That on May 12, 1932, in pursuance of the said meeting of the Hanover Nest No. 131, Order of Owls, held on August 19, 1932, "Charles H. Sell, Levi Emlet and Joseph H.

998

Martin, Trustees of Hanover Order of Owls," presented a petition to the court of common pleas of York county to dissolve and liquidate the "Hanover Order of Owls."

(26) That the said petition alleged in substance that the Hanover Order of Owls is an unincorporated beneficial and social organization not affiliated with any parent organization; that the order has collected approximately $6,000 from dues and merchandise; that there are no debts owing; that they desire to distribute the funds, "to and amongst the members of the Order."

(27) That it is admitted by the defendants that the above petition was erroneously presented in the name of the unincorporated order instead of the incorporated Hanover Nest No. 131, Order of Owls.

(28) That it was not made to appear from the testimony that the unincorporated Order of Hanover Owls, if still in existence has voted to dissolve.

(29) That no proceedings have been instituted in the court of common pleas of York county to dissolve the incorporated Hanover Nest No. 131, Order of Owls.

(30) That on June 16, 1932, the bill in equity in the instant case was filed by Ferdinand D'Esopo, supreme president of the Order of Owls, for himself and on behalf of all of the members of the Order of Owls, a voluntary unincorporated association, who are similarly situated with him, against Hanover Order of Owls, Nest. No. 131, M. W. Krebs, president, Joseph H. Martin, secretary and trustee, T. J. Little, treasurer, and Charles H. Sell, Levi Emlet, trustees, all of Hanover, York county, in the state of Pennsylvania, individually and as representative of all the members of subordinate Nest No. 131, Hanover Order of Owls, a voluntary unincorporated association.

(31) That on December 19, 1932, plaintiffs amended their bill by making the corporation, Hanover Nest No. 131, Order of Owls, a party defendant.

(32) That the said bill in equity avers in substance that the defendants were organized and functioned as a subordinate branch of the Order of Owls, and have failed for several years to pay the per capita tax of 10 cents per quarter per member to the Home Nest; that the defendants at a stated meeting voted to discontinue; that the defendants have in their possession money belonging to the Hanover Nest, and are threatening to convert without authority said funds for purposes other than those for which the funds have been accumulated; that defend-

ants have caused an unlawful division of lodge funds in the amount of $28,000; that the defendants have caused plaintiffs irreparable damages by bringing discredit upon the plaintiff Owls and by setting a precedent to other members of the Owls from their wrongful acts and impairing the usefulness of said order.

(33) That the plaintiffs pray for the following relief:

(1) An injunction restraining defendants from wrongfully dividing money in their hands; (2) a decree impressing a delivery in favor of the Order of Owls of all property held by defendants in any name whatsoever, accumulated by them as Owls; (3) a decree directing defendants to render an accounting to the plaintiffs of all moneys in their possession belonging to the Hanover Order; (4) an accounting of all damages sustained by plaintiffs by reason of defendants' illegal acts; (5) an injunction restraining defendants as prayed for; (6) general relief.

From the foregoing findings of fact, the court arrives at the following conclusions of law:

(1) That the Hanover Nest No. 131, Order of Owls, is an undissolved, legally existing local beneficial society properly incorporated under the Act of 1874, P. L. 73, section 2, paragraph 9 (15 PS Pa. § 2, par. 9), and now regulated by the provisions of the Act of May 3, 1933, P. L. 289 (15 PS Pa. § 2851—1 et seq.), relating to nonprofit corporations.

(2) That dissolution and distribution of property of Hanover Nest No. 131, Order of Owls, is governed by the Act of 1933, P. L. 289 (15 PS Pa. § 2851—1 et seq.).

(3) That the dissolution proceedings instituted in the court of common pleas of York county, Pa., brought in the name of the unincorporated Order of Owls, is unauthorized, and will result in an illegal distribution of the funds of the incorporated order, to wit, Hanover Nest No. 131, Order of Owls.

(4) That the Home Nest is not entitled to all of the property of the Hanover Nest No. 131, Order of Owls.

(5) That the Hanover Nest No. 131, Order of Owls, owes to the Home Nest the per capita tax provided for by the constitution of the Order of Owls, for and during the period from January 19, 1926, to the present date.

(6) That the plaintiffs are entitled to an injunction restraining the defendants from

continuing the dissolution proceedings now pending in the court of common pleas of York county and from dividing the money in their hands by virtue of said dissolution proceeding.

(7) That the Home Nest is entitled to an accounting for the per capita tax owing to them by the Hanover Nest No. 131, Order of Owls.

### Discussion.

In order to understand the various rights of the parties to this suit, it is first necessary to determine the legal status of the Hanover Nest No. 131, Order of Owls. This necessitates an examination of the several acts of Assembly of Pennsylvania relating to the incorporation of societies for beneficial or protective purposes.

The Act of April 29, 1874, P. L. 73, section 2, paragraph 9 (15 PS Pa. § 2, par. 9), provides that nonprofit corporations of the first class may be organized for the following purposes: "The maintenance of a society for beneficial or protective purposes to its members from funds collected therein." The Hanover Nest No. 131, Order of Owls, was incorporated under this section of the act of 1874.

As far back as 1890, the Supreme Court, in Commonwealth v. Equitable Ben. Ass'n, 137 Pa. 412, 18 A. 1112, held that the beneficial societies authorized to be incorporated by the act of 1874 were the kind of local beneficial associations existing and well understood at the time. Simonton, P. J., in Commonwealth ex rel. v. Order of Vesta, 2 Pa. Dist. R. 254, describes these beneficial societies as those having "a membership composed of citizens of the particular locality, * * * who were known to each other, with simple methods for the management of their affairs, including personal visitation of the members claiming relief, which were possible only in local associations. * * *" As pointed out by Simonton, P. J., the laws of the commonwealth of Pennsylvania made no provisions for the incorporation of beneficial societies operating on the supreme and subordinate lodge plan. Endlich, P. J., in Pennsylvania State Camp, P. O. of A's Application, affirmed in 261 Pa. 184, 104 A. 590, says, in an able opinion from which we quote at length: "Possibly with a view to meeting the effect of this decision (Commonwealth v. Order of Vesta, supra) and conferring the power denied by it, the act of April 6, 1893 (P. L. 7), was passed, 'defining fraternal and relief societies and their status, authorizing them to create subordinate lodges,' etc., and applying to 'any association * * * now or hereafter formed or organized and carried on for the sole benefit of its members,' etc. Assuming the validity of this legislation, it would, standing alone, doubtless have affected beneficial societies thereafter erected under the act of 1874. But on the same day was approved another statute, act of April 6, 1893 (P. L. 10), 'regulating the organization and incorporation of secret fraternal beneficial societies, orders or associations and protecting the rights of members therein'— a statute, which expressly gives the power to operate through supreme and subordinate lodges, and which, as pointed out by Judge Sulzberger, in Lady Foresters of America, 18 Pa. Dist. R. 780, embodies a complete system for the incorporation of such societies, and is not an amendment or supplement to the general incorporation law of 1874. The two enactments of 1893, being in pari materia, and passed at the same legislative session, are, of course, to be interpreted with reference to each other. White v. Meadville, 177 Pa. 643, 35 A. 695, 34 L. R. A. 567. If, therefore, the second enactment (P. L. 10) provides an exclusive method of incorporation of societies operating on the lodge plan, the direction of the first enactment (P. L. 7) that it apply to beneficial societies 'hereafter formed,' etc., must be understood as contemplating such societies formed, etc., under the act of April 6, 1893 (P. L. 10). Now it was held in Rhoads v. Hoernerstown B. & L. Ass'n, 82 Pa. 180 * * * that a later statute, providing a complete system for the incorporation and regulation of certain corporations upon conditions differing from those prescribed by a previous statute, necessarily takes the place of the latter and affords an exclusive method of incorporation of such associations thereafter. It is not apparent how the operation of this principle with respect to the statutes here in question can be denied. The effect of it seems clearly to be that the incorporation of a beneficial society, to be conducted on the lodge plan, must be under the act of 1893."

█ It seems clear from the above discussion that the act of 1874 applied solely to local beneficial societies and the act of 1893 applied to beneficial societies conducted on the lodge plan or those societies which had a supreme body with power to create subordinate lodges.

█ In 1921 the Assembly of Pennsylvania passed the Act of May 20, 1921, P. L. 916 (40 PS Pa. § 1011 et seq.), which repealed the Acts of 1893, P. L. 7; 1893 P. L. 10, and so much of paragraph 9, section 2, of the

Act of 1874, P. L. 73, as applies to incorporation of societies for the purpose of transacting any class of insurance. The act of 1921 is designed to provide for the incorporation of beneficial societies operating on the lodge or the superior and subordinate system. By repealing the acts of 1893 it was intended that the act of 1921 should apply to the same type of corporation that was provided for by the acts of 1893. This is apparent by the similarity of these acts, the definitions of "fraternal benefit society" and "lodge system" in section 1 of the act of 1921 (40 PS Pa. § 1011), and by the title of the latter act which reads in part as follows: "Defining fraternal benefit societies and their status; authorizing such societies to create subordinate lodges. * * * " It is true the act of 1921 repealed so much of paragraph 9, section 2, of the act of 1874 as applied to incorporation of societies for the purpose of transacting insurance, but such an organization as the Hanover Nest No. 131, Order of Owls, is clearly a beneficial association as distinguished from an insurance company, under the distinction drawn in Commonwealth v. Equitable Beneficial Ass'n, 137 Pa. 412, pp. 419, 420, 18 A. 1112, and therefore the said act of 1921 did not affect the Hanover Corporation.

■ In 1933 the Assembly of Pennsylvania passed the Act of May 3, 1933, P. L. 289 (15 PS Pa. § 2851—1 et seq.), relating to nonprofit corporations, and provides in section 3 thereof that every corporation of the first class organized under the Corporation Act of 1874 shall hereafter be subject to the provisions of this act without formal reorganization hereunder, and shall be deemed to exist under this act. Section 4 expressly provides that the act does not relate to beneficial societies operating on the lodge plan. This act also expressly repeals so much of the act of 1874 as applies to nonprofit corporations. It seems clear that this act was intended to apply to those local beneficial societies that were provided for by the act of 1874.

From the foregoing discussion, it is apparent that the Hanover Nest No. 131, Order of Owls, was properly incorporated under the act of 1874 as a local beneficial society, and that the acts of 1893 and 1921 had no effect upon the said Hanover corporation. The act of 1933, by repealing so much of the act of 1874 as applied to nonprofit corporations, now governs and regulates the corporate existence of Hanover Nest No. 131, Order of Owls. In section 1001 (40 PS Pa. § 2851—1001), relating to dissolution, jurisdiction over dissolution proceedings is given to the court of common pleas, wherein the corporation carries on its activities. Dissolution proceedings are deemed to commence upon presentation by the corporation of a petition to dissolve. The act of 1933 further provides that the funds of the corporation, after debts are paid, are to be distributed among the members of the corporation entitled thereto.

■■ The action instituted in this court is a bill in equity, and is not a dissolution proceeding. The only court which has jurisdiction over dissolution of the Hanover corporation is the court of common pleas of York county, before whom no proceeding for dissolution has been instituted by the said Hanover Corporation. If this court should impress a delivery to the plaintiffs, as prayed for by them, of all the property of the Hanover corporation it would be tantamount to a decree of dissolution, which this court has no jurisdiction to make. However, since dissolution proceedings have been commenced in York county in the name of an unincorporated association to distribute funds belonging to the Hanover corporation, a proceeding which is unauthorized and illegal, and which is admitted by defendants to be erroneous, this court can enjoin such a dissolution which will illegally dissipate the Hanover corporation's funds, to part of which the Home Nest is entitled under its constitution on account of per capita taxes. As additional relief, the Supreme Order or Home Nest is entitled to an accounting for the per capita taxes which have not been paid. Although it appears that the distribution made by the Hanover Nest No. 131, Order of Owls, in 1926, was illegal, this court will not decide the legality of said distribution. The only reason that the plaintiffs ask this court to declare the said distribution illegal is to impress a delivery to them of all the property of the Hanover order. This court will not decide that question, for the additional reason that the plaintiffs have not shown that they are entitled to such property under the constitution of the Order of Owls or under the state law.

What we have said has no application to the unincorporated Order of Owls of Hanover, as no testimony was introduced to determine whether it is still in existence and since it further appears that the unincorporated association, if still in existence, has little or no funds.

The requests for findings of fact and conclusions of law submitted by plaintiffs are filed herewith, and as affirmed are made a

part of this opinion. Defendants have submitted no requests for findings and conclusions.

This cause came on to be heard at this term, and was argued by counsel; and thereupon, upon consideration thereof, it is ordered, adjudged, and decreed as follows, viz., that the defendants be, and they hereby are, enjoined from further prosecuting the dissolution proceeding instituted in the court of common pleas of York county on May 16, 1932, and that the defendant Hanover Nest No. 131, Order of Owls, render an accounting to the "Home Nest" of the Order of Owls, of all per capita taxes due since January 19, 1926, as required by the constitution of the Order of Owls and the by-laws of the defendant Hanover Nest No. 131, Order of Owls.